## PENNYWIT v. EATON.

### [ON MERITS.]

Judgment affirmed with 10 per cent. damages in a case brought here in dis-
regard of the law as already settled by precedents of the court.

ERROR to the Supreme Court of Arkansas; the case being
this:

On the 3d day of January, 1862, during the late rebellion,
the Fourth District Court of New Orleans (then held by a
judge appointed by a *military* governor of Louisiana) issued a
writ of attachment against the steamer " Thirty-fifth Paral-
lel," of which one Pennywit and certain other persons were
owners; each owning a part. These owners had given a
promissory note at New Orleans, on the 8th day of October,
1861, for $6795.71, to Eaton & Betterton. Bond with sure-
ties was given, and the attachment was released. Judgment
was subsequently rendered against the defendants personally
for the amount of the note with interest. Suit was instituted
upon this judgment against Pennywit, in a court of Pu-
laski County, in Arkansas. The defence was that at the
time of the original suit, Pennywit was not a citizen of
Louisiana, and had not been served with process, but that
he was a citizen of Arkansas, then domiciled there, and had
ever since remained such. The judgment of the Pulaski
County Court was for the defendant, and on appeal taken
by the plaintiffs, the judgment was reversed in the Supreme
Court of the State. In the meantime Pennywit died, and
the suit was revived against his executors, and judgment
was rendered against them in pursuance of the mandate of
the Supreme Court. This latter judgment was affirmed in
the Supreme Court, and the case was brought by writ of
error to this court.

*Mr. A. H. Garland, for the plaintiffs in error:*

1. The case originated upon what purported to be a judg-
ment, rendered in a New Orleans court, by *attaching* a steam-
boat. The suit in that court was not an attachment against

the interest or property of Pennywit in the steamboat, but was a proceeding *in rem* and directly against the boat itself. No such proceeding could be valid except when the process issued from an admiralty court of the United States.\* The court could not by its process thus seize upon the boat.

2. The judge who presided in the court that pretended to render judgment was appointed by the military authority then holding the territory of Louisiana, and his commission was issued by that authority. Neither the military commander nor the military governor of Louisiana had any such power, and the appointment in this case was a nullity. If, as this court has decided, in *Texas* v. *White*,† the seceding States were still States of the Union, then it is as true, no military appointments of judges for Louisiana, one of those seceding States, can be upheld. If it be held, however, that Louisiana, being then in war against the General Government, and the forces of the latter having had possession of her territory, a government there by those forces was a necessity, that may be admitted, so far as the necessities of military occupation were concerned, and no further.‡ When this court said, in *The Grapeshot*,§ that a court organized by the President of the United States in Louisiana, during the occupation by the Federal troops, was a lawful court, it did not state or intimate that any military commander or governor there could organize a court and appoint judges. How does the President himself get the authority? Obviously as commander-in-chief of the army, under the Constitution of the United States. When it is given to him as such, it is given to no one else. It is not shown that Mr. Lincoln, the then President, attempted to delegate his authority to his subordinates in Louisiana; and if he had it would not help the matter. A delegated authority cannot be delegated.

*Mr. W. M. Rose, contra.*

---

\* The Moses Taylor, 4 Wallace, 411; The Hine v. Trevor, Ib. 555; The Belfast, 7 Id. 624.

† 7 Wallace, 700.    ‡ Handlin v. Wickliffe, 12 Id. 173.    § 9 Id. 129.

The CHIEF JUSTICE delivered the opinion of the court.

Two questions are. presented, both of which have been adjudicated. The first relates to the proceeding of the court of Louisiana, by which the original judgment was rendered. It is claimed that this was a proceeding in admiralty. It was, in fact, a proceeding against the persons of the defendants, instituted by attachment. Such a suit, we have held, is not a proceeding in admiralty.*

The second question relates to the validity of the appointment of the judge who presided in the court of the Fourth District of New Orleans. His commission came from the military governor, who was appointed by the President during the late war. We have already decided that such appointments were within the power of such a governor.†

There can have been no good ground for the writ of error under the former adjudications of this court, and there is no attempt to question these adjudications. We are obliged, therefore, to regard this writ of error as prosecuted for delay.

The judgment of the Supreme Court of Arkansas must be

AFFIRMED, WITH TEN PER CENT. DAMAGES.

---

\* The Genesee Chief v. Fitzhugh, 12 Howard, 443; Jackson v. Steamboat Magnolia, 20 Id. 296; Taylor v. Carryl, Ib. 583; The Hine v. Trevor, 4 Wallace, 555; The Belfast, 7 Id. 624; Leon v. Galceran, 11 Id. 185.

† Handlin v. Wickliffe, 12 Id. 173; Leitensdorfer v. Webb, 20 Howard, 177; The Grapeshot, 9 Wallace, 133.