## JOHNSON *v.* CHICAGO AND PACIFIC ELEVATOR COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Argued November 30, 1886. — Decided December 13, 1886.

The jib-boom of a vessel towed by a steam-tug, in the Chicago River, at Chicago, Illinois, struck a building on land, through the negligence of the tug, and caused damage to it, and the loss of shelled corn stored in it. A statute of Illinois gave a lien on the tug for the damage, to be enforced by a suit *in personam* against her owner, with an attachment against the tug, and a judgment *in personam* against her owner and the surety in a bond for her release. In such a suit, in a court of Illinois, to recover such damage, such a bond having been given, conditioned to pay any judgment in the suit, and the tug having been released, an application afterwards by J., claiming to be part owner of her, to be made a defendant in the suit, was denied, and a judgment for the damage was given against the de-

fendant and the surety in the bond, without personal notice to the latter, which was affirmed by the Supreme Court of Illinois.   On a writ of error from this court: *Held,*

(1) The cause of action was not a maritime tort of which an Admiralty Court of the United States would have jurisdiction;

(2) The State could create the lien and enact rules to enforce it, not amounting to a regulation of commerce, or to an admiralty proceeding *in rem*, or otherwise in conflict with the Constitution of the United States;

(3) The actual proceeding in this case was a suit *in personam*, with an attachment to enforce the lien, and was not forbidden by that Constitution;

(4) The provision of subdivision 6, of § 9, of article 1, of the Constitution of the United States, in regard to giving a preference to the ports of one State over those of another, is not a limitation on the power of a State;

(5) The judgment against the surety was proper, as the statute provided for it, and formed part of the bond;

(6) J. was not unlawfully denied a hearing, because he did not apply to be made a defendant until after the tug was discharged.

On the 22d of September, 1881, the Chicago & Pacific Elevator Company, an Illinois corporation, filed a petition in the Circuit Court of Cook County, Illinois, setting forth that, on the 29th of August, 1881, it was the proprietor of a warehouse on the land, in Cook County, near the bank of the Chicago River, which had stored in it a quantity of shelled corn; that on that day Jacob Johnson, a resident of Chicago, in said county, was the owner of the tug-boat Parker, of above five tons burthen, used and intended to be used in navigating the waters and the canals of Illinois, and having its home port in Illinois; that the Parker, on that day, was towing a schooner, attached to her by a hawser, in the Chicago River, in said county, the schooner being under the control of the officers of the tug; and that the tug and the schooner were so negligently managed, and the schooner was so negligently towed, by those having control of the tug, that the jib-boom of the schooner went through the wall of the warehouse, whereby a large quantity of the corn ran out and was lost in the river, causing a damage of $394.38 to the petitioner.   The petition prayed for a writ of attachment against Johnson, to be issued to the sheriff, commanding him to attach the tug and to sum-

mon the defendant to appear, and for a decree subjecting the tug to a lien, for such damages.

On the giving of the required bond on behalf of the petitioner, a writ of attachment was issued on the same day to the sheriff, commanding him to attach the tug and to summon Johnson to appear on the 17th of October. The return of the sheriff stated, that he had attached all the right, title, and interest of Johnson in and to the tug, and had served the writ on Johnson personally, on the same day.

A bond was given on the same day, executed by Johnson, as owner of the tug, as principal, and Henry A. Christy, as surety, conditioned to pay all money which should be adjudged by the court in the suit to be due to the petitioner. Thereupon a writ was issued to the sheriff, commanding him to return the attached property to Johnson, which was done.

On the 17th of October, Johnson filed a paper called a "demurrer and exceptions," setting up, among other things, that the court had no jurisdiction to create or enforce a lien on the tug. On the 21st of October, the plaintiff entered a motion that the default of the defendant be taken for want of an affidavit of merits. On October 31st, after the denial of a motion by the defendant for leave to file an affidavit of merits, the court entered of record the default of the defendant for the want of such an affidavit, and a judgment "that the plaintiff ought to recover of the defendant its damages by reason of the premises." At the same time the defendant entered a motion to vacate the default, insisting on the want of jurisdiction in the court.

On the same day, James B. Carter, alleging that he was, when the attachment was levied, and still continued to be, a part owner of the tug, filed a motion that he be made a defendant, and be permitted to defend against the petition.

On the 5th of November, the motion of Johnson to vacate the default against him was overruled; and the motion of Carter was denied. Thereupon Johnson filed a motion to dismiss the petition for want of jurisdiction in the court to enforce the lien claimed, because the tug was a steam vessel of above 20 tons burthen, duly enrolled and licensed in conformity to Title

L. of the Revised Statutes of the United States, and was engaged in the business of domestic commerce and navigation on the navigable waters of the United States, and that exclusive jurisdiction to enforce a lien *in rem* on the tug was in the District Courts of the United States. This motion was denied.

Proper bills of exceptions were allowed to the foregoing rulings.

On the 30th of January, 1882, the damages were assessed by a jury at $300; and a judgment was entered in favor of the plaintiff against Johnson and Christy, for $300 and costs, on the 11th of February, 1882. They excepted, and they and Carter appealed to the Appellate Court for the First District of Illinois. That court, in July, 1882, affirmed the judgment of the Circuit Court of Cook County, and an appeal was taken by the same parties to the Supreme Court of Illinois. Among the assignments of error in that court were these: That Carter was not allowed to defend; that the judgment was entered against Christy without notice or process; that the inferior courts had no jurisdiction to enforce the lien on a vessel engaged in domestic commerce between the States; that the statute of Illinois violated the Constitution of the United States; and that the exclusive jurisdiction in the premises was in a court of the United States.

The statute under which the proceedings in this suit took place is c. 12 of the Revised Statutes of Illinois, entitled "Attachment of Water Craft," which went into effect July 1st, 1874. Rev. Stat. Ill. 1881, p. 159. The act, § 1, gives a lien on all water craft of above five tons burthen, "used or intended to be used in navigating the waters or canals of this State, or used in trade and commerce between ports and places within this State, or having their home port in this State. . . . Fifth. For all damages arising from injuries done to persons or property by such water craft, whether the same are aboard said vessel or not, where the same shall have occurred through the negligence or misconduct of the owner, agent, master, or employé thereon." The following other sections of the act are material:

"§ 4. The person claiming to have a lien under the provisions of this act may file with the clerk of any court of record of competent jurisdiction, in the county where any such water craft may be found a petition, setting forth the nature of his claim, the amount due after allowing all payments and just offsets, the name of the water craft, and the name and residence of each owner known to the petitioner; and when any owner or his place of residence is not known to the petitioner, he shall so state, and that he has made inquiry, and is unable to ascertain the same; which petition shall be verified by affidavit of the petitioner or his agent or attorney. If the claim is upon an account or instrument in writing, a copy of the same shall be attached to the petition.

"§ 5. The petitioner, or his agent or attorney, shall also file with such petition a bond, payable to the owner of the craft to be attached, or, if unknown, to the unknown owners thereof, in at least double the amount of the claim, with security to be approved by the clerk, conditioned that the petitioner shall prosecute his suit with effect, or, in case of failure therein, will pay all costs and damages which the owner or other person interested in such water craft may sustain, in consequence of the wrongful suing out of such attachment, which bond may be sued by any owner or person interested, in the same manner as if it had been given to such person by his proper name. Only such persons shall be required to join in such suit as have a joint interest; others may allege breaches and have assessment of damages, as in other cases of suits on penal bonds.

"§ 6. Upon the filing of such petition and bond as aforesaid, the clerk shall issue a writ of attachment against the owners of such water craft, directed to the sheriff of this county, commanding him to attach such water craft, which writ shall be tested and returnable as other writs of attachment. Such owners may be designated by their reputed names, by surnames, and joint defendants by their separate or partnership names, or by such names, styles, or titles as they are usually known. If the name of any owner is unknown, he may be designated as unknown owner.

"§ 7. The writ shall be substantially in the following form:

State of Illinois, ⎫ *ss.*
—— County, ⎰

*The People of the State of Illinois, to the Sheriff of —— County, Greeting:*

Whereas —— (name of the petitioner) hath complained that owners of the —— (name of the vessel) are justly indebted to him in the [sum of] —— dollars (amount due), for which he claims a lien upon said vessel, and has given bond with security as required by law: We, therefore, command you that you attach the said —— (name of vessel), her tackle, apparel, and furniture, to satisfy such demand and costs, and all such demands as shall be exhibited against such vessel according to law, and having attached the same, you summon —— (here insert the names of owners of such vessel), owners of such vessel, to be and appear before the —— Court of —— at its next term, to be holden at the court-house in said county, on the —— day of ——, then and there to answer what may be objected against them, and the said —— (name of vessel). And have you then and there this writ, with a return thereon in what manner you have executed the same.

Witness: —— clerk of —— court, and the seal thereof, this —— day of ——, A.D. 18——.        —— ——, *Clerk.*

"§ 8. The sheriff or other officer to whom such writ shall be directed shall forthwith execute the same by reading the same to such defendants, and attaching the vessel, her tackle, apparel and furniture, and shall keep the same until disposed of as hereinafter provided. Such sheriff or other officer shall also, on or before the return day in such writ, or at any time after the service thereof, upon the request of the petitioner, make a return to said court, stating therein particularly his doings in the premises, and shall make, subscribe and annex thereto a just and true inventory of all the property so attached.

"§ 9. Whenever any such writ shall be issued and served, no other attachment shall issue against the said water craft, unless the first attachment is discharged, or the vessel is bonded.

"§ 10. Upon return being made to such writ, unless the vessel has been bonded, as hereinafter provided, the clerk shall immediately cause notice to be given in the same manner as required in other cases of attachment. The notice shall contain, in addition to that required in other cases of attachment, a notice to all persons to intervene for their interests on a day certain, or that said claim will be heard *ex parte*.

"§ 11. Any person having a lien upon or any interest in the water craft attached may intervene to protect such interest, by filing a petition as hereinbefore provided, entitled an intervening petition; and any person interested may be made a defendant at the request of himself, or any party to the suit, and may defend any petition by filing an answer as hereinafter provided, and giving security satisfactory to the court to pay any costs arising from such defence; and upon the filing of any intervening petition, a summons, as hereinbefore provided, shall issue; and if the same shall be returned not served, notice by publication may be given as aforesaid; and several intervening petitioners may be united with each other, or the original, in one notice.

"§ 12. Any person intervening to enforce any lien or claims adverse to the owners of the craft attached shall, at the time of filing his petition, file with the clerk a bond as in the case of the original attachment.

"§ 13. Intervening petitions may be filed at any time before the vessel is bonded, as provided in section fifteen (15); or, if the same is not so bonded, before order for distribution of the proceeds of the sale of the craft. And the same proceeding shall thereupon be had as in the case of claims filed before sale."

"§ 15. The owner, or his agent or attorney, or any other person interested in such water craft, desiring the return of the property attached, having first given notice to the petitioner, his agent or attorney, of his intention to bond the same, may, at any time before judgment, file with the clerk of the court in which the suit is pending, a bond to the parties having previously filed petitions against such craft, in a penalty at least double the aggregate of all sums alleged to be due the

several petitioners, with security to be approved by the clerk, conditioned that the obligors will pay all moneys adjudged to be due such claimants, with costs of suit."

"§ 17. Upon receiving a bond or deposit, as provided in either of the foregoing sections, it shall be the duty of the clerk to issue an order of restitution, directing the officer who attached the water craft to deliver the same to the person from whose possession the same was taken, and said water craft shall thenceforth be discharged from all the liens secured by bond or deposit, unless the court or judge thereof, upon motion, shall order the same again into custody on account of the insufficiency or insolvency of the surety."

"§ 21. If, upon the trial, judgment shall pass for the petitioner, and the water craft has been discharged from custody as herein provided, said judgment or decree shall be rendered against the principal and sureties in the bond: *Provided*, that in no case shall the judgment exceed the penalty of the bond, and the subsequent proceedings shall be the same as now provided by law in personal actions in the Courts of Record in this State. If the release has been upon deposit, the judgment shall be paid out of said deposit."

The Supreme Court of Illinois affirmed the judgment of the Appellate Court of the First District. 105 Ill. 462. To review the judgment of the Supreme Court, Johnson, Carter, and Christy brought a writ of error.

*Mr. Henry W. Magee* for plaintiffs in error.

The "Attachment of Water Craft" Act is invalid in attempting to *create* and *enforce a lien in rem* against a vessel engaged in domestic commerce upon the navigable waters of the United States of America, above twenty tons burthen, duly enrolled and licensed. Exclusive jurisdiction for that purpose is in the District Court of the United States. Sec. 2, Art. III, Constitution of the United States. Subdivis. 8 — Sec. 563, Title XIII, Revised Statutes of the United States — *The Hine* v. *Trevor*, 4 Wall. 555; *The Moses Taylor*, 4 Wall. 411; *The Belfast*, 7 Wall. 624; *The Eddy*, 5 Wall. 481; *The*

*Lottawanna,* 21 Wall. 558; *Weston* v. *Morse,* 40 Wis. 459; *In re Josephine,* 39 N. Y. 22.

The Legislature had not the power to confer upon the Circuit Courts jurisdiction to enforce a lien on vessels duly enrolled and licensed by the United States, by proceedings in rem, according to the procedure of Admiralty Courts. *Weston* v. *Morse,* 40 Wis. 455; *Campbell* v. *Sherman,* 35 Wis. 103; *The John Richards,* Newberry, Adm. 73; *The Golden Gate,* Newberry, Adm. 296; *Leon* v. *Galceran,* 11 Wall. 185; *The Lottawanna,* 21 Wall. 567; *The Edith,* 94 U. S. 518; *Ferran* v. *Hasford,* 54 Barb. 200; *The Edith,* 5 Ben. 432.

The rendition of judgment against Christy without suit, issue, trial, hearing, presence, or representation by attorney or otherwise, was a deprivation of property without due process of law, and in this respect a violation of the Fifth Amendment to the Constitution. So was the denial to Carter, part owner of the vessel, of the right to interplead and to defend his property.

The provisions of the Illinois statute amount to a regulation of commerce, inasmuch as they give to the ports of Illinois an Admiralty proceeding under State law, enforceable in its courts alone. It violates the provision of the Constitution that "no preference shall be given by any regulation of commerce to the ports of one State over those of another," and the settled principle that the Federal Courts have jurisdiction in Admiralty of all cases of maritime liens.

*Mr. Robert Rae* for defendant in error submitted on his brief.

Mr. Justice Blatchford, after stating the case, delivered the opinion of the court.

It is assigned here for error (1) that the State Court had no jurisdiction to enforce a lien *in rem* on a vessel above 20 tons burthen, engaged in domestic commerce among the States, and duly enrolled and licensed in conformity with Title 50 of the Revised Statutes; (2) that the State statute is repugnant to the Constitution of the United States, because it purports to give

to a State Court admiralty jurisdiction to enforce a maritime lien *in rem ;* (3) that judgment was given against Christy without notice to him or due process of law ; (4) that Carter, a part owner of the tug, was denied a hearing.

Under the decisions of this court in *The Plymouth,* 3 Wall. 20, and in *Ex parte Phœnix Ins. Co.,* 118 U. S. 610, at the present term, it must be held that the cause of action in this case was not a maritime tort of which a District Court of the United States, as a court of admiralty, would have jurisdiction; and that the remedy belonged wholly to a court of common law; the substance and consummation of the wrong having ta¹ ᵉn place on land, and not on navigable water, and the cause of action not having been complete on such water. This being so, no reason exists why the remedy for the wrong should not be pursued in the State Court, according to the statutory method prescribed by the law of the State, even though that law gives a lien on the vessel. The cases in which State statutes have been held void by this court, to the extent in which they authorized suits *in rem* against vessels, because they gave to the State Courts admiralty jurisdiction, were only cases where the causes of action were cognizable in the admiralty. Necessarily, no other cases could be embraced. *The Moses Taylor,* 4 Wall. 411; *The Hine* v. *Trevor,* 4 Wall. 555; *The Belfast,* 7 Wall. 624.

In the present case, the suit is a suit *in personam.* The petition states that the plaintiff "complains of Jacob Johnson," "and makes him defendant herein ;" and that the plaintiff has demanded the amount of his damage from the defendant, but the latter refuses to pay it. The petition prays that the tug may be attached and the defendant be summoned. The writ of attachment recites that the plaintiff has complained that Johnson is indebted to it in $394.38, for which it claims a lien on the tug. The writ commands the sheriff to attach the tug and to summon Johnson to appear before the court on a day named. Attachment was made of " all the right, title, and interest" of Johnson in and to the tug, and at the same time the writ was served on him by being read to him. The releasing bond executed by Johnson and Christy recites the

action as being one for damages alleged to be due to the plaintiff from Johnson. From the time of the issuing of the writ of restitution, on the same day the petition was filed, the tug disappears from the proceedings, the bond having taken her place. The judgment was one *in personam* against Johnson and Christy, as required by § 21 of the statute, in a case where the attached vessel has been discharged from custody. That section also provides that the proceedings subsequent to the judgment "shall be the same as now provided by law in personal actions in the Courts of record in this State."

So far, therefore, as this suit is concerned, the action, in the shape in which it comes before this court, is a suit *in personam*, with an attachment as security, the attachment being based on a lien given by the State statute, and a bond having been, by the act of the defendant, substituted for the thing attached.

In *Taylor* v. *Carryl*, 20 How. 583, this court upheld the validity of the seizure of a vessel under a process of foreign attachment issuing from a State Court of Pennsylvania, in pursuance of a statute of that State, as against a subsequent attempt to seize her under process in admiralty. In the course of the opinion of the court, delivered by Mr. Justice Campbell, it is said: "The process of foreign attachment has been for a long time in use in Pennsylvania, and its operation is well defined, by statute as well as judicial precedents. . . . The habit of courts of common law has been to deal with ships as personal property, subject in the main, like other personal property, to municipal authority, and liable to their remedial process of attachment and execution, and the titles to them, or contracts and torts relating to them, are cognizable in those courts."

The subsequent case of *Leon* v. *Galceran*, 11 Wall. 185, is very much like the one now before us. There, by a statute of Louisiana, a mariner had a lien or privilege on his vessel for his wages, and he brought a suit *in personam* therefor in a court of the State, and had the vessel sequestered. She was released on a bond given by her owner, and by Leon as surety, for the return of the vessel on final judgment. Judgment being rendered against the owner *in personam*, and the vessel

not being returned, the mariner sued the surety, on the bond, in the same court, and had judgment for the amount fixed by the original judgment. On a writ of error from this court, sued out by Leon, it was urged for him, that, under the authority of *The Moses Taylor* and *The Hine* v. *Trevor*, the State Court had no jurisdiction to enforce the lien by a seizure before judgment. On the other side, it was urged that the suit was a common law remedy, within the clause in § 9 of the Judiciary Act of September 24th, 1789, 1 Stat. 77, (now embodied in § 711, subdivision 3, of the Revised Statutes,) which, after granting to the District Courts of the United States " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction," saves " to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." This court held, that the action *in personam* in the State Court was a proper one, because it was a common law remedy, which the common law was competent to give, although the State law gave a lien on the vessel in the case, similar to a lien under the maritime law, and it was made enforceable by a writ of sequestration in advance, to hold the vessel as a security to respond to a judgment, if recovered against her owner, as a defendant; that the suit was not a proceeding *in rem*, nor was the writ of sequestration; that the bond given on the release of the vessel became the substitute for her; that the common law is as competent as the admiralty to give a remedy in all cases where the suit is *in personam* against the owner of the property; and that these views were not inconsistent with any expressed in *The Moses Taylor*, in *The Hine* v. *Trevor*, or in *The Belfast*.

The case of *Pennywit* v. *Eaton*, 15 Wall. 382, is a similar one.

There being no lien on the tug, by the maritime law, for the injury on land inflicted in this case, the State could create such a lien therefor as it deemed expedient, and could enact reasonable rules for its enforcement, not amounting to a regulation of commerce. Liens under State statutes, enforceable by attachment, in suits *in personam*, are of every day occurrence, and may even extend to liens on vessels, when the pro-

ceedings to enforce them do not amount to admiralty proceedings *in rem*, or otherwise conflict with the Constitution of the United States. There is no more valid objection to the attachment proceeding to enforce the lien in a suit *in personam*, by holding the vessel by mesne process to be subjected to execution on the personal judgment when recovered, than there is in subjecting her to seizure on the execution. Both are incidents of a common law remedy, which a court of common law is competent to give. This disposes of the objection that, the vessel being engaged in commerce among the States, and enrolled and licensed therefor, no lien on her could be enforced by attachment in the State Court. The proceeding to enforce the lien, in this case, was not such a regulation of commerce among the States as to be invalid, because an interference with the exclusive authority of Congress to regulate such commerce, any more than regulations by a State of the rates of wharfage for vessels, and of remedies to recover wharfage, not amounting to a duty of tonnage, are such an interference, because the vessels are engaged in inter-State commerce. *Cannon* v. *New Orleans*, 20 Wall. 577, 582; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559 ; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691.

Nor is the act of Illinois, so far as this case is concerned, obnoxious to the objection that it is a regulation of commerce which gives preference to the ports of Illinois over those of another State, within the inhibition of subdivision 6 of § 9 of Article 1 of the Constitution of the United States. As was said in *Munn* v. *Illinois*, 94 U. S. 113, 135, " this provision operates only as a limitation of the powers of Congress, and in no respect affects the States in the regulation of their domestic affairs." See, also, *Morgan* v. *Louisiana*, 118 U. S. 455, 467.

Whether proceedings under the Illinois statute, different from those had in this case, may or may not be obnoxious to some of the objections raised, is a question which must be left to be determined when it properly arises.

As to the objection made by Christy to the judgment against him, the Supreme Court of Illinois overruled it on the

ground that, as the bond was given with the statute existing, the statute formed part of the bond, and the surety virtually consented that judgment might go against him on the bond, under § 21, if the plaintiff should be entitled to judgment against Johnson, citing *Whitehurst* v. *Coleen*, 53 Ill. 247, and *Hennies* v. *The People*, 70 Ill. 100. This was a correct ruling. *Beall* v. *New Mexico*, 16 Wall. 535; *Moore* v. *Huntington*, 17 Wall. 417, 422.

As to the objection made by Carter, that he was denied a hearing, the Supreme Court of Illinois overruled it on the ground that, on the giving of the release bond, the tug was discharged from the lien unless ordered again into custody, and the subsequent judgment could only be against Johnson and Christy, *in personam*. This was a sound view.

*Judgment affirmed.*