## UNITED STATES v. GIORDANI.

(Circuit Court, S. D. New York. June 1, 1908.)

1. SHIPPING—STATUTORY REGULATION—CARRIAGE OF DANGEROUS SUBSTANCES.
   Rev. St. § 4476 (U. S. Comp. St. 1901, p. 3052), making it a misdemeanor to pack or put up for shipment or to knowingly ship or attempt to ship on vessels any gunpowder or other dangerous substances enumerated, unless packed and marked as required by the preceding section, construed in connection with the other cognate sections of the statute, and especially section 4400 as amended in 1882 and 1895 (Act Aug. 7, 1882, c. 441, 22 Stat. 346, and Act March 1, 1895, c. 146, 28 Stat. 699 [U. S. Comp. St. 1901, p. 3015]), applies to shipments on foreign private steam vessels carrying passengers from ports of the United States to any other place or country.

2. SAME—CONSTRUCTION AND SCOPE OF STATUTE.

Rev. St. §§ 4475, 4476 (U. S. Comp. St. 1901, p. 3052), relating to the packing for shipment, shipment, or delivery to a vessel as stores of gunpowder or other dangerous substances, were enacted in the exercise by Congress of its constitutional power to regulate foreign and interstate commerce, and are applicable only to shipments or intended shipments on vessels engaged in such commerce.

3. SAME—GUNPOWDER.

The provisions of such sections relating to the packing and shipment of gunpowder include within their meaning metallic cartridges containing gunpowder.

On Demurrers to Indictments and Motions to Quash.

Henry L. Stimson (Goldthwaite H. Dorr and Phillips Moore, of counsel), U. S. Atty.

Perry Allen, for defendant.

CHATFIELD, District Judge. The defendant has been indicted for (1) knowingly and unlawfully attempting to ship as merchandise, upon a steamer called the Graecia, certain casks containing rifle cartridges, each cartridge containing 70 grains in some cases, and in others 40 grains, of gunpowder (the quantity of cartridges is considerable, but that does not enter into the question here involved); and (2) for knowingly and unlawfully attempting to ship gunpowder and other articles of like character, not duly packed and marked—that is to say, certain cartridges—both indictments being laid under the provisions of section 4476, Rev. St. (U. S. Comp. St. 1901, p. 3052). The second indictment describes the offense in the following language:

"Unlawfully, willfully and knowingly did attempt to ship gunpowder and other articles of like character not duly packed and marked, to wit, thirty-six casks and barrels containing cartridges, the said casks and barrels marked C M G M and labeled with cement labels, and which said casks and barrels containing Gonaives the said gunpowder and cartridges were not distinctly marked on the outside with the name and description of the articles contained therein."

It is impossible to determine certainly from this language whether the gunpowder and other articles referred to consisted entirely of cartridges, or whether the casks and barrels contained gunpowder and cartridges, inasmuch as the word "other" would indicate articles distinct from the gunpowder. But from an inspection of both indictments, and from the use of the words, "to wit, thirty-six casks and barrels containing cartridges," it would seem, for the purposes of this demurrer, that the indictment can be assumed to mean 36 casks and barrels of cartridges containing gunpowder, and that the words in the indictment, "containing the said gunpowder and cartridges," are intended to be used in an inclusive sense, being equivalent to "containing cartridges filled with gunpowder," rather than to refer to two separate articles. As will be shown later, the defendant contends that cartridges are not included in the statutory term "gunpowder." But, if both gunpowder and cartridges were intended by the pleader, this objection would fall; the insertion of the word "cartridge" being superfluous on indictment.

The question whether this indictment is sufficiently definite therefore can be dismissed, and for the present consideration, from the standpoint of the various sections of the Revised Statutes, the construction of the language most favorable to the defendant will be taken. The defendant has demurred upon the ground that the indictment shows that the Graecia is a foreign vessel, and because of that fact the defendant claims that the provisions of section 4476, under which this indictment is brought, do not apply to the transaction in question. The defendant has also made a motion to quash, in order to present to the court the proposition that this court can take judicial notice of the scientific proposition that metallic cartridges are not dangerous articles for the purpose of shipment by a common carrier, and will not explode from heat even in the case of fire.

The language of section 4476, as at present in force, is as follows:

"Sec. 4476. Every person who packs or puts up, or causes to be packed or put up, for shipment, any gunpowder, nitro-glycerine, camphene, naphtha, benzine, benzole, coal-oil, crude or refined petroleum, oil or vitriol, nitric or other chemical acids, oil or spirits of turpentine, friction-matches, or other articles of like character otherwise than as directed by the preceding section, or who knowingly ships or attempts to ship the same, or delivers the same to any such vessel as stores, unless duly packed and marked, shall be deemed guilty of a misdemeanor, and punished by fine not exceeding two thousand dollars, or imprisonment not exceeding eighteen months, or both."

It will be seen that the act forbidden is shipping or delivering for shipment "to any such vessel" gunpowder, or other articles of like character as stores unless duly packed and marked in accordance with the requirements of section 4475, which specifies the manner of such packing and marking. The entire contention upon this demurrer, therefore, turns upon the meaning of the words "any such vessel." Section 4476 is part of chapter 2 of title 52 of the Revised Statutes. This title is headed, "Regulation of Steam Vessels." The original enactment is contained in the Laws of 1871, and this original statute will be referred to later, as it seems to throw light upon the meaning of the language used. The first section of title 52 is section 4399, and is as follows (Act Feb. 28, 1871, c. 100, 16 Stat. 440 [U. S. Comp. St. 1901, p. 3015]):

"Sec. 4399. Every vessel propelled in whole or in part by steam shall be deemed a steam vessel within the meaning of this title."

Section 4400, as amended by the laws of 1882 (Act Aug. 7, 1882, c. 441, 22 Stat. 346) and 1895 (Act March 1, 1895, c. 146, 28 Stat. 699 [U. S. Comp. St. 1901, p. 3015]), is as follows:

"Sec. 4400. All steam vessels navigating any waters of the United States which are common highways of commerce or open to general or competitive navigation, excepting public vessels of the United States, vessels of other countries, and boats propelled in whole or in part by steam for navigating canals, shall be subject to the provisions of this title. And all foreign private steam vessels carrying passengers from any port of the United States to any other place or country shall be subject to the provisions of sections forty-four hundred and seventeen, forty-four hundred and eighteen, forty-four hundred and twenty-one, forty-four hundred and twenty-two, forty-four hundred and twenty-three, forty-four hundred and twenty-four, forty-four hundred and seventy, forty-four hundred and seventy-one, forty-four hundred and seventy-two, forty-four hundred and seventy-three, forty-four hundred and seventy-nine," etc.

Section 4401 contains the following:

"Sec. 4401. All coastwise sea-going vessels, and vessels navigating the great lakes, shall be subject to the navigation laws of the United States, when navigating within the jurisdiction thereof."

It will thus be seen that, no matter what the scope of the original enactment, certain statutes, as at present worded, refer to vessels of foreign countries other than men of war. The Graecia would be a vessel of this class, and, if section 4476 had been expressly enumerated in section 4400, this particular demurrer could not have been interposed.

But the defendant contends that, inasmuch as section 4400 mentions by number some sections of the Revised Statutes as applicable to foreign vessels when navigating waters of the United States, by necessary exclusion, the other statutes not mentioned by number must be held not to apply to such foreign vessels. The law of 1871 (Act Feb. 28, 1871, c. 100, 16 Stat. 440 [U. S. Comp. St. 1901, p. 3049]), from which the title in question was carried into the Revised Statutes, provided, in section 1, for a license to "any vessel propelled in whole or in part by steam" upon compliance with the provisions of the act. Section 2 provided for safeguards against fire on "every steamer so propelled." Section 3 contains provisions for further protection of the same sort for vessels carrying fifty or more passengers. Section 4 forbade the carrying of loose hay, naphtha, explosive fluids, and such articles on any steamer carrying passengers, and also said:

"Nor shall gunpowder be carried on any such vessel except in case of special license, as hereinafter provided."

Further, oil, turpentine, etc., could be carried if put up "in good metallic vessels," etc. Section 5 said "all gunpowder," etc., when packed for shipment, shall be securely packed, etc., "and the package, box, cask, or other vessel containing the same shall be distinctly marked on the outside with the name or description of the article," etc., "and every person who shall pack or put up, or cause to be packed or put up for shipment, any gunpowder," etc., "otherwise than as aforesaid, or shall knowingly ship or attempt to ship the same, or shall deliver the same to any such vessel as stores, unless packed and marked as aforesaid, shall be deemed guilty of a misdemeanor," etc. Other sections regulating steam vessels and inspection follow, until we come to section 41, which says:

"Sec. 41. That all steamers navigating the lakes, bays, inlets, sounds, rivers, harbors, or other navigable waters of the United States, when such waters are common highways of commerce, or open to general or competitive navigation, shall be subject to the provisions of this act: Provided, that this act shall not apply to public vessels of the United States or vessels of other countries, nor to boats, propelled in whole or in part by steam, for navigating canals."

Plainly, under the original law, a foreign vessel like the Graecia was entirely outside of the provisions of this law, and could not be affected by the language of section 5 above quoted. This particular section 5 became in the Revised Statutes of 1874 sections 4475 and 4476.

Let us examine this law again to see just what the words "to any such vessel" must refer. They clearly do not mean the "vessel," pack-

age, cask, etc., containing the substance, although this is immediately preceding. They cannot refer to a vessel using petroleum for fuel, which is the nearest use of the word "vessel" prior to section 5, for the words under discussion are obviously general in their application to the act. But in the early part of section 4, and frequently throughout that section, are found the words "any such vessel," "such steamer," referring directly to the first portion of that section, which, as has been said, governs the shipment of explosive, burning, and dangerous articles, on "any steamer carrying passengers." Here seems to be the clue to the meaning of the phrase in question, and, turning again to the Revised Statutes of 1874, we see that section 4472 is the embodiment of the first portion of the section 4 of the law of 1871 just referred to. Need we go further in our search? It will be noted that section 41 of the original law followed and limited all of the preceding sections, and was stronger in the manner of statement, although apparently no broader in scope than section 4400 of the Revised Statutes before amendment by chapter 146 of the act of March 1, 1895, and chapter 44 of the Laws of 1882. The words, "this act shall not apply to vessels of other countries," are less capable of evasive argument than "all steam vessels * * * except vessels of other countries, shall be subject to the provisions of this title," but evidently both statements are intended to effect the same result. By the amendment of 1882 (chapter 441) "foreign private steam vessels carrying passengers from any port of the U. S. to any other place or country" were made subject to the provisions of sections 4472 and 4473 of the Revised Statutes, and it would seem to necessarily follow that, if under the law before this amendment a delivery "to any such vessel" was found to refer to the "passenger vessels" subject to the provisions of section 4472, then by the same reasoning under the present law "any such vessel" referred to in section 4476 would mean any "passenger vessel" covered by section 4472, as amended, and thus in the present case to the Graecia. The act made a misdemeanor is one occurring on land and in the United States. The amendment to section 4472 and section 4473 was all that was necessary, therefore, to extend the provisions of section 4476 to the foreign vessels intended, and the exception in the early part of section 4400 was necessarily amended thereby without the particular mention of section 4475 in the amendatory act. A footnote to section 4472 in the official edition of the Revised Statutes refers us to sections 4278 and 4280 and sections 5353 and 5355. This reference is instructive, and will be considered in connection herewith, inasmuch as it brings in the provisions of other titles of the Revised Statutes, and at the same time, in section 4280, recognizes the constitutional limitation upon the police powers of the general government and its jurisdiction over interstate and foreign commerce. Sections 4278, 4279, and 4280, as well as sections 5353, 5354, and 5355, relate to the shipment of goods from a foreign country to the United States, or from the United States to a foreign country. Section 5353 in particular forbids and imposes a penalty upon the act of delivering or causing to be delivered nitroglycerine, etc., "on board any vessel or vehicle whatever, employed in conveying passengers by land or water

between any place in a foreign country and any place within the United States." It can readily be seen that the act of a citizen of a foreign government delivering nitroglycerine to a foreign steamer for importation into the United States would be what is known as an extraterritorial crime. If the delivery be made upon an American vessel, and the person is afterward apprehended within the jurisdiction of the United States, or if extradition is agreed upon between the nations for the commission of such an act, the application of the statute is plain. It is unnecessary to consider here the extremely difficult question that might arise over an attempt to extradite the citizen of a foreign country for delivery in that country to a foreign vessel, even if the goods reached the United States.

But this discussion serves to point out the distinction urged by the government as to the meaning of section 4476. The prosecution contends that packing for shipment, upon any such vessel, refers to an act, so far as shipment out of the United States is concerned, occurring upon land. That shipping, or attempting to ship, or delivering to a vessel for shipment, as specified in section 4476, is likewise when concerned with a shipment out of the United States a transaction that occurs upon land, and that the crime can be committed with reference to any vessel, domestic or foreign, and whether subject to the inspection laws of the United States or not. There are two objections to this contention. One is that the statute (section 4476) plainly refers to a packing for shipment or delivery for shipment "to any such vessel," and (except as we have been able by the former reasoning in this opinion to apply section 4476 to the foreign vessels referred to in the amendment of 1882) the general prohibition of section 41 of the Law of 1871 and of section 4400 of the Revised Statutes (before amendment) would exclude this construction. The second objection is more serious. Authority to legislate on this subject can be derived from the Constitution only under the interstate and foreign commerce clause (article 1, § 8, subd. 3), or under the provisions giving to the United States maritime and admiralty jurisdiction (article 3, § 2, subd. 1). A happening on land, such as packing for shipment or an attempt at delivery, could not be within maritime and admiralty jurisdiction, unless the act had gone so far as to be actually a delivery "on board." The cases of Cleveland Terminal R. R. v. Steamship Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, and Johnson v. Chicago & Pacific Elevator Co., 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447, illustrate the meaning of this argument. If the act in question had gone to the extent of a delivery on board, it would certainly have been controlled under the former statute by the exception as to "vessels of foreign countries," and under the present statute must be brought within the scope of the amendment of 1882. If the shipment or delivery is subject to the jurisdiction of the United States, it would seem, therefore, to be only under the foreign commerce clause of the Constitution, and the construction of the statute assuming control over any such packing or shipment, as distinguished from its intended delivery to a vessel for export, would probably render the entire section unconstitutional. The sending of firecrackers, not properly packed and marked, by a local express com-

pany, to a sailor on a ship at a wharf, would not be under the jurisdiction of the United States unless the shipment was for export, or unless the ship in its maritime character was the basis of the jurisdiction. So it can be seen that an attempt to include all such packing or shipments would interfere with the jurisdiction of the states, and lay the statute open to the objection of unconstitutionality. Trade-Mark Cases, 100 U. S. 82, 99, 25 L. Ed. 550; Employers' Liability Cases, 207 U. S. 463, 501, 502, 28 Sup. Ct. 141, 52 L. Ed. 297.

The further objection that cartridges are not "gunpowder," but a manufacture of brass and gunpowder, does not seem to be well founded. Not only does the United States government so classify cartridges in its regulations for the carrying of explosives under authority of section 4422 of the Revised Statutes, but the facts that no chemical or physical change of substance has occurred, and that the brass envelope (while it protects) does not affect the substance in any way, show that this classification is correct.

In making a comparison of the act of 1871, supra, with the sections of the Revised Statutes, it will be noticed that sections 4400 to 4476, especially the section from 4470 to 4476, follow the same general scheme and take up the various matters for treatment in the same general order as did the statute of 1871. It has not been considered necessary, therefore, to go through separately and in detail in this opinion the language of those sections of the Revised Statutes. Nor is it considered necessary to attempt a determination of the scope of section 4401. In the Law of 1871 this section was inserted under paragraphs relating to navigation, and by its language would seem to refer to the handling and management of the vessels rather than to their construction and inspection. In the revision and codification of 1874, this particular section was brought forward and placed in its present position. From 1874, therefore, down to 1882, the position of this section in the title, and a liberal construction of the word "navigation," might have brought coastwise steamers within the subsequent sections of the title. But that question need not arise here. The amendment of 1882 has definitely covered the situation, and makes such a construction of section 4401 unnecessary to sustain the present indictment. It is also unnecessary to consider questions relating to the delivery of gunpowder and explosives to freight steamers, especially in view of the provisions of section 4422 of the Revised Statutes, supra, which provides that:

"Upon the application of any master or owner of any steam vessel employed in the carriage of passengers for a license to carry gunpowder," etc.

Both indictments, therefore, outlining a charge which would be an offense under the portion of the statutes relating to the shipment of gunpowder, and inasmuch as neither indictment contains a charge that the cartridges are dangerous articles of like character, it is unnecessary to consider the proposition upon which the motion to quash is based, viz., that cartridges are not dangerous or inflammable as freight, and the demurrers will be overruled. The conclusion reached by the court upon these demurrers seems to be exactly similar

to the decision of the United States Supreme Court in the case of Deslions et al. v. La Compagnie Générale Transatlantique, Owner of the Steamship La Bourgogne (decided May 18, 1908) 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. ——. Upon pages 21 and 22 of that opinion, various sections of title 3 of the Revised·Statutes are held applicable to foreign steam vessels as a result of the same course of reasoning, and in the same manner by which the decision in this case has been reached, and while the point under examination was not the same, nevertheless the decision is believed to be authority for the result reached herein.

The demurrers will be overruled, and the motion to quash denied.