Judge Marshall
delivered the Opinion of the Court.
In the spring of 1824, a stranger, bringing with him two horses, stopped at the inn of John Brennan, in the city of Lexington, and became a guest of the inn for the night; in consequence of which, the two horses were received into the stable attached to it, and belonging to the innkeeper. The inn and stable being at that time crowded to overflowing, this unknown guest departed on the next day without particular notice, and, without the knowledge of Brennan, left one of .the two horses which, he had brought. On discovering this fact, diligent inquiry was made to ascertain who was the owner of the horse, and by whom he had been left. These inquiries proved unavailing until about the 24th of October, 1824, when Calvin Black claimed the horse *311 which had remained till then in the stable, alleging that he had been stolen from him; which is admitted to be true, but was unknown to Brennan, until stated to him by Black. Brennan offered to restore the horse, upon being paid for his keeping, which it is admitted was then reasonably worth fifty-six dollars and twenty-five cents; and on Black’s refusing to make such payment, Brennan filed this bill, stating the above facts, asserting a lien on the horse for the value of his keeping and feeding, which is stated to be more than his value, praying a sale of the horse for the satisfaction of the account, and a decree against Black for so much as may remain unsatisfied by such sale; and also, for the value of the future keeping of the horse as long as he should remain with Brennan. On filing the bill, an order was made permitting Brennan to keep the horse, on executing bond for paying all damages which might accrue in consequence of the order, unless Black should execute a bond conditioned to abide by the decree of the Court. The horse remained in possession of Brennan, until the 9th of December following, when Black executed bond according to the order, and took him away.
The bill.
The law makes it the duty of innkeepers to receive and feed the horses of travellers, and gives them liens, by virtue of which a landlord may refuse to redeliver a guest’s horse till his reasonable charge for keeping him is paid; and tho a guest departs and leaves his horse, the lien and right of retainer, for past and accruing expenses, continues; and this lien will prevail (unless there was some ground for suspicion, that Would justify refusal to receive the horse) against all claimants—even against the true owner, when the horse had been stolen, and brought to the inn by the thief.
The foregoing facts having been admitted to be true, the Court in October, 1835, directed the horse to be delivered to a commissioner, and that he should be sold, and that out of the proceeds, the account for his keeping, amounting then to $78 86, should be paid to Brennan, &c. On the day after this decree, the commissioner reported that Black had sold the horse, in the spring of 1835: whereupon, a decree was rendered against Black for $78 86, and the costs of the suit: for the reversal of which, he prosecutes a writ of error.
It being the duty of an inn keeper to receive and provide for the horse of a traveller who becomes his guest, the law, in consideration of this duty, gives him *312 a lien upon the horse for his compensation. And as the effect of this lien is, that he may refuse to deliver the horse to his guest, until the charges of his keeping are paid, it would seem clear that, if the guest go off leaving his horse, the innkeeper is not bound to turn him out, and thus give up his lien, but may still keep him looking to his lien for remuneration. And further, ¡as the innkeeper cannot investigate the title of property brought by his guests, and is bound, unless there be something to excite suspicion and put him on his guard, to receive it and keep it properly, as belonging to the guest who has it in possession, it seems also reasonable that, when the keeping of the property necessarily involves expense, as in case of a horse, he should have a lien upon the property itself for the reimbursement of his reasonable expenditures in keeping and providing for it, though he keep it merely for his own security; and as this lien attaches to the horse in consideration of necessary services and expenditures in keeping him, it would seem that, in the absence of any circumstance to raise suspicion, it should subsist independently of any question of title, and must prevail against the true owner himself, though the horse had been stolen from him, and taken to the inn by the thief. Whitaker on Lien, 118.
A court of equity has jurisdiction to enforce liens and pledges of personal property generally j and may order a sale of the horse of an innkeeper’s guest, to pay charges: but chancery has no jurisdiction of such a demand independent of the lien. And, at the proceeding is in rem, query, whether there could be a decree in personam, for the balance, in case the horse should not sell for enough to pay the charges.
We are of opinion, therefore, that Brennan had a lien upon the horse in question, for his reasonable charges in keeping and feeding him; and there can be no doubt that a court of equity—having, in general, the jurisdiction to enforce liens and pledges of personal property—had jurisdiction to order a sale of the horse, for the payment of charges. But independently of the lien, the Chancellor had no jurisdiction of the case. And the suit to enforce the lien being purely a proceeding in rem, the jurisdiction over that suit, and to effectuate its objects, did not necessarily give or carry with it a right to go beyond the thing. If the horse had been taken to the inn, and left there by Black; and had been delivered and sold, according to the decretal order of the Court, and the proceeds of sale had been insufficient to satisfy the charges for his keeping, it might have *313 been a question whether according to the repeated decisions of this Court, in cases of mortgages and other liens enforcible in equity, there could have been a personal decree for the balance.
Where a horse is brought to an inn—not the owner, but by some other without authority—there is no implied obligation on the part of the owner to pay any charges. The horse may be sold, as above, but for the balance, if any, the innkeeper can look to the party from whom he received the horse
A bill being filed by an innkeeper, to enforce his lien upon a horse, the owner, under an order of court, takes him and gives bond to produce him, to be disposed of according to the decree. As the horse was taken to the inn by a who had stolen him, the owner is liable by force of the bond only, and that liability is for the horse or its value when receive—not for a larger sum due for keeping him. But, as the bond is a substitute for the lien, there may be decree against the owner for the sum for which the bond makes him liable. An order for an immediate sale of the horse upon the filing of tho bill, would be proper, if tho horse is delivered to the owner, upon bond, it should first be valued.
But as the horse was not taken to the inn by the defendant, or under his authority, but by a thief, and the defendant, had refused to take him away and pay charges, there was no ground, when the bill was filed, for raising even an assumpsit against him. And had the horse remained in Brennan’s possession, until the order of sale, his recovery would most obviously have been limited to the proceeds of the sale. He would have had, in that case, no personal demand, legal or equitable, against the owner, or any one else, but the individual who had left the horse with him, and thus impliedly promised to pay for his keeping.
The order made upon filing the bill, was nothing more than a disposition of the horse by the law, providing for his preservation and safe-keeping while m the custody of the law. It was not intended to have the effect of imposing any new obligation, or conferring any new right, upon either party, except such as was expressed in the order as being necessary for its purposes. The reception of the horse by the owner, under this order, was in fact an advantage to Brennan, as it relieved him from charges in keeping the horse, for which he had no prospect of remuneration beyond its value upon sale, and he was secured to the extent of that value by the bond of the owner to abide by the decree. The obligation entered into by the defendant to abide by the decree, certainly gave no right to pronounce a decree which would otherwise have been improper. It refers, of course, to the decree which might be pronounced with respect to the disposition of the horse. And if the decree, actually rendered on that subject, had been obeyed, by the delivery of the horse to the commissioner, the obligation would have been discharged. In taking the horse on the conditions proscribed by the Court, we do not suppose that Black *314 can properly be considered as taking him in any other character than that of a receiver, or stakeholder, or as coming under any other obligation than that which was expressed in the order and the bond. He was bound to deliver the horse, and his liability to respond in damages in case of failure, was the only alternative to which, in our opinion, he was subject. Being a party to the suit, this liability being in fact an alternative for the lien itself, was the proper foundation of a personal decree against him, as a substitute for the proceeding against the horse, of which he had taken the custody. But if the reception of the horse did not, as we have supposed, make him responsible for more than the performance of the decree directing the delivery of the horse for sale, it is clear that the failure to deliver him could not occasion damages to Brennan, beyond the vendible value of the , horse, and did not create any greater liability on the part of Black.
We are, therefore, of opinion, that the Court erred in decreeing the whole amount of the demand against Black, without regard to the value of the horse. It might have been proper, under the circumstances of this case, to have directed a sale as soon as the bill was filed, and to have held the proceeds subject to the final order of the Court. It certainly would have been proper to have had the horse valued when he was delivered to the owner; and, according to the view we have taken, the ascertainment of his value was necessary for the rendition of a final decree.
Therefore, for the error above noticed, the decree is reversed, and the cause remanded, with directions to ascertain the value of the horse at the time of his delivery to Black, and to render a decree against him for that value, together with the costs of suit.