# KNAPP, STOUT & CO. COMPANY *v.* McCAFFREY.

## ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 263.  Submitted April 24, 1900.—Decided May 14, 1900.

A bill in equity in a state court to foreclose a common law lien upon a raft for towage services, is not an invasion of the exclusive admiralty jurisdiction of the District Courts, but is a proceeding to enforce a common law remedy and within the saving clause of section 563 of a remedy which the common law is competent to give.

THIS was a bill in equity filed in the Circuit Court for the county of Mercer, Illinois, by the defendant in error, John McCaffrey, against the Knapp, Stout & Co. Company, (hereinafter called the Knapp Company,) and the Schulenburg & Boeckler Lumber Company, (hereinafter called the Schulenburg Company,) and its assignees, to enforce a lien for towage upon a half raft of lumber then lying at Boston Bay, in Mercer County.

The suit arose from a contract made April 6, 1893, by McCaffrey with the Schulenburg Company, in which, after reciting that McCaffrey had purchased of this company three steam tow boats for the sum of $17,500, it was agreed that McCaffrey was to tow all the rafted lumber such company would furnish him at or below their mill at Stillwater, Minnesota, to St. Louis, and deliver the same there to the company in quantities not exceeding one half a raft at a time, for which service he was to be paid $1.12½ per thousand feet, board measure, for the lumber contained in the raft.  The other provisions of the contract, of which there were many, were not material to the present controversy.  After towing a number of rafts for the company, the charges for which remained unpaid, one of McCaffrey's steamers, known as the Robert Dodds, left Stillwater, October 13, 1894, with raft No. 10 of that year.  The river being low and navigation difficult, McCaffrey was instructed to divide the raft, to bring one half to St. Louis, and to lay up the other half in some safe harbor.  In compliance with these instruc-

tions McCaffrey divided the raft on October 20 at Boston Bay harbor in Mercer County, leaving one half there, while the other half was towed to St. Louis and delivered to the lumber company on November 2. The company paid the clerk of the boat $1250 without directions as to its application, and McCaffrey applied it on the amount due him for the towage of other rafts. The steamer returned to Boston Bay the morning of November 4, and laid up outside the raft for the winter.

On the next day, November 5, the Schulenburg Company sold the half raft in Boston Bay to the Knapp Company for $15,000, part in cash and the remainder in a note due in four months, which was paid at maturity. A bill of sale was given for the lumber, and a letter written to the watchman in charge of the raft informing him of the sale. On November 9 the Schulenburg Company made a voluntary assignment in St. Louis for the benefit of creditors. McCaffrey, hearing of the assignment, offered both companies to tow the half raft to St. Louis under his contract, but the Knapp Company informed him that they did not wish him to do so, saying that they did their own towing; whereupon McCaffrey, claiming to be still in possession of the half raft and believing that the company was about to take it from him by force, filed this bill to foreclose his lien for towage. The Knapp Company gave a bond for the amount of the claim and took the raft away.

The case came on for hearing in the Circuit Court upon pleadings and proofs, and resulted in a decree dismissing the bill without prejudice. McCaffrey appealed to the appellate court, which reversed the decree of the Circuit Court, and remanded the cause with directions to enter a decree for the sum of $3643.17, with interest thereon. The Knapp Company appealed to the Supreme Court of the State, which affirmed the judgment of the appellate court, (178 Ill. 107); whereupon defendant sued out a writ of error from this court.

*Mr. Charles P. Wise* for plaintiff in error.

*Mr. Charles E. Kremer* and *Mr. Guy C. Scott* for defendant in error.

Mr. Justice Brown, after making the above statement, delivered the opinion of the court.

Defendants set up in their answers and insisted, both before the appellate court and the Supreme Court of Illinois, that, if plaintiff had any lien upon the raft at all for his towage services, it was a maritime lien, enforceable only in the District Court of the United States as a court of admiralty. This is the only Federal question presented in the case.

By article three, section two, of the Constitution, the judicial power of the general government is declared to extend to "all cases of maritime and admiralty jurisdiction;" and, by section nine of the original judiciary act of September 24, 1789, c. 20, 1 Stat. 73, 76, it was enacted "that the District Courts shall have, exclusively of the courts of the several States, . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, . . . saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." This language is substantially repeated in subdivision eight of Rev. Stat. § 563, wherein it is expressly stated that "such jurisdiction shall be exclusive, except in the particular cases where jurisdiction of such causes and seizures is given to the Circuit Courts."

The scope of the admiralty jurisdiction under these clauses was considered in a number of cases, arising not long after the District Courts were established, notably so in that of *De Lovio* v. *Boit*, 2 Gall. 398, wherein Mr. Justice Story brought his great learning to bear upon an exhaustive examination of all the prior authorities upon the subject both in England and in America.

But the exclusive character of that jurisdiction was never called to the attention of this court until 1866, when the States had begun to enact statutes giving liens upon vessels for causes of action cognizable in admiralty, and authorizing suits *in rem* in the state courts for their enforcement. The validity of these laws had been expressly adjudicated in a number of cases in Ohio, Alabama and California. The earliest case arising in this court was that of *The Moses Taylor*, 4 Wall. 411, in which was considered a statute of California creating a lien for the breach

of any contract for the transportation of persons or property, and also providing that actions for such demands might be brought directly against the vessel. The act further provided that the complaint should designate the vessel by name; that the summons should be served upon the master, or person in charge, the vessel attached, and, in case of judgment recovered by the plaintiff, sold by the sheriff. An action having been brought by a passenger before a justice of the peace of the city of San Francisco for failure to furnish him with proper and necessary food, water and berths, the defence was interposed that the cause of action was one of which the courts of admiralty had exclusive jurisdiction. The case finally reached this court, where the defence was sustained, the court holding that the contract for the transportation of the plaintiff was a maritime contract; that the action against the steamer by name, authorized by the statute of California, was a proceeding in the nature and with the incidents of a suit in admiralty. Upon this point Mr. Justice Field observed: "The distinguishing and characteristic feature of such suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common law process, whether of mesne attachment or execution, property is reached only through a personal defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in a common law proceeding, the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which is sold." The court also held that the statute of California to the extent to which it authorized actions *in rem* against vessels for causes of action cognizable in admiralty, invested her courts with admiralty jurisdiction, and to that extent was void.

At the same term arose the case of *The Hine* v. *Trevor*, 4 Wall. 555, in which a statute of Iowa giving a lien for injuries to persons or property, and providing a remedy *in rem* against the vessel, was held to be obnoxious to the exclusive jurisdiction.

of the Federal courts. Speaking of the common law remedy, saved by the statute, Mr. Justice Miller observed: "But the remedy pursued in the Iowa courts in the case before us, is in no sense a common law remedy. It is a remedy partaking of all the essential features of an admiralty proceeding *in rem*. The statute provides that the vessel may be sued and made defendant without proceeding against the owners or even mentioning their names. That a writ may be issued and the vessel seized, on filing a petition similar in substance to a libel. That after a notice in the nature of a monition, the vessel may be condemned and an order made for her sale, if the liability is established for which she was sued. Such is the general character of the steamboat laws of the Western States." The same principle was applied in the case of *The Belfast*, 7 Wall. 624, to a statute of Alabama under which contracts of affreightment were authorized to be enforced *in rem* in the state courts by proceedings the same in form as those used in the courts of admiralty. This was also held to be unconstitutional.

The principle of these cases was restated in *The Lottawanna*, 21 Wall. 558, 579, although the question settled by that case was that materialmen furnishing repairs and supplies to a vessel in her home port do not acquire thereby a lien upon the vessel by the general maritime law. To the same effect is *The J. E. Rumbell*, 148 U. S. 1, in which a lien by a state law for such repairs and supplies was given precedence of a prior mortgage. Finally, in the case of *The Glide*, 167 U. S. 606, it was held that the enforcement of such a lien upon a vessel, created by a statute of Massachusetts, for repairs and supplies in her home port, for which a remedy *in personam* may be had in admiralty, was exclusively within the admiralty jurisdiction of the courts of the United States, and that the statute of Massachusetts, to the extent that it provided for a proceeding *in rem*, and for a sale of the vessel, was unconstitutional and void. See also *Moran* v. *Sturges*, 154 U. S. 256.

The rule to be deduced from these cases, so far as they are pertinent to the one under consideration, is this: That wherever any lien is given by a state statute for a cause of action cognizable in admiralty, either *in rem* or *in personam*, proceedings

*in rem* to enforce such lien are within the exclusive jurisdiction of the admiralty courts.

But the converse of this proposition is equally true, that if a lien upon a vessel be created for a claim over which a court of admiralty has no jurisdiction in any form, such lien may be enforced in the courts of the State. Thus, as the admiralty jurisdiction does not extend to a contract for building a vessel, or to work done or materials furnished in its construction, *The Jefferson,* (*People's Ferry Co.* v. *Beers,*) 20 How. 393; *The Capitol,* (*Roach* v. *Chapman,*) 22 How. 129, we held in *Edwards* v. *Elliott,* 21 Wall. 532, that, in respect to such contracts, it was competent for the States to énact such laws as their legislatures might deem just and expedient, and to provide for their enforcement *in rem.* The same principle was applied in *Johnson* v. *Chicago &c. Elevator Co.,* 119 U. S. 388, to a statute of Illinois giving a lien upon a vessel for damage done to a building abutting on the water, upon the ground that the court had previously held that there was no jurisdiction in admiralty for damage done by a ship to a structure affixed to the land. *The Plymouth,* 3 Wall. 20; *Ex parte Phœnix Ins. Co.,* 118 U. S. 610. There was really another sound reason for the decision in the fact that the suit was *in personam,* with an attachment given upon the property of the defendant, which, as we shall see hereafter, is quite a different case from a proceeding *in rem.*

To establish the proposition that the proceeding in this case was an invasion of the exclusive jurisdiction of the admiralty courts defendants are bound to show, first, that the contract to tow a raft is a maritime contract; second, that the proceeding taken was a suit *in rem* within the cases above cited, and not within the exception of a common law remedy, which section 563 was never designed to forestall.

The first of these conditions may be readily admitted. That a contract to tow another vessel is a maritime contract is too clear for argument, and there is no distinction in principle between a vessel and a raft. Whether the performance of such a contract gives rise to a lien upon the raft for the towage bill admits of more doubt; indeed, the authorities, as to how far a raft is within the jurisdiction of admiralty, are in hopeless con-

fusion, but for the purposes of this case we may admit that such lien exists. But, if existing, it would not oust or supplant the common law lien dependent upon possession.

The real question is whether the proceeding taken is within the exception " of saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it." It was certainly not a common law action, but a suit in equity. But it will be noticed that the reservation is not of an *action* at common law, but of a common law *remedy;* and a remedy does not necessarily imply an action. A remedy is defined by Bouvier as "the means employed to enforce a right, or redress an injury." While, as stated by him, remedies for non-fulfillment of contracts are generally by action, they are by no means universally so. Thus, a landlord has at common law a remedy by distress for his rent—a right also given to him for the purpose of exacting compensation for damages resulting from the trespass of cattle. A bailee of property has a remedy for work done upon such property, or for expenses incurred in keeping it, by detention of possession. An innkeeper has a similar remedy upon the goods of his guests to the amount of his charges for their entertainment; and a carrier has a like lien upon the thing carried. There is also a common law remedy for nuisances by abatement; a right upon the part of a person assaulted to resist the assailant, even to his death; a right of recaption of goods stolen or unlawfully taken, and a public right against disturbers of the peace by compelling them to give sureties for their good behavior. All these remedies are independent of an action.

Some of the cases already cited recognize the distinction between a common law action and a common law remedy. Thus in *The Moses Taylor,* 4 Wall. 411, 431, it is said of the saving clause of the judiciary act: " It is not a remedy in the common law courts which is saved, but a common law remedy." To same effect is *Moran* v. *Sturges,* 154 U. S. 256, 276.

In the case under consideration the remedy chosen by the plaintiff was the detention of the raft for his towage charges. That a carrier has a lien for his charges upon the thing carried, and may retain possession of such thing until such charges are

paid, is too clear for argument. We know of no reason why this principle is not applicable to property towed as well as to property carried. While the duties of a tug to its tow are not the duties of a common carrier, it would seem that his remedy for his charges is the same, provided that the property towed be of a nature admitting of the retention of possession by the owner of the tug. But whatever might be our own opinion upon the subject, the Supreme Court of Illinois, having held that under the laws of that State the plaintiff had a possessory lien upon this raft, that such lien extended to so much of the raft as was retained in his possession, for the entire bill, and that under the facts of this case plaintiff did have possession of the half raft until he surrendered it under order of the court for its release upon bond given, we should defer to the opinion of that court in these particulars, as they are local questions dependent upon the law of the particular State.

Whether a bill in equity will lie to enforce a possessory lien may admit of some doubt, and the authorities are by no means harmonious. That a person having a lien upon chattels has no right himself to sell such chattels in the discharge of his lien, is well settled. *Doane* v. *Russell*, 3 Gray, 382; *Jones* v. *Pearle*, 1 Strange, 557; *Lickbarrow* v. *Mason*, 6 East, 21; *Briggs* v. *Boston and Lowell Railroad*, 6 Allen, 246; *Indianapolis & St. Louis Railroad* v. *Herndon*, 81 Ill. 143; *Hunt* v. *Haskell*, 24 Me. 339; and in the case of the *Thames Iron Works &c. Co.* v. *Patent Derrick Co.*, 1 J. & H. 93, it was held by Vice Chancellor Wood that ship builders, having a lien upon the ship built by them according to the contract for the purchase money, could not enforce their lien by sale. But in some jurisdictions, and notably so in Illinois, it is held that liens for the enforcement of which there is no special statutory provision, are enforceable in equity. *Black* v. *Brennan*, 5 Dana, 310; *Charter* v. *Stevens*, 3 Denio, 33; *Dupuy* v. *Gibson*, 36 Ill. 197; *Cushman* v. *Hayes*, 46 Ill. 145; *Cairo & Vincennes Railroad* v. *Fackney*, 78 Ill. 116; *Barchard* v. *Kohn*, 157 Ill. 579. Such being the practice in Illinois, we recognize it as expressive of the local law. There were circumstances in this case which appealed with peculiar force to the discretion of a court of equity. The

defendant disputed McCaffrey's lien and right of possession to the raft, and announced its intention of towing it to St. Louis itself. It was in a position where it might have been taken away by a superior force, unless the plaintiff incurred the expense of employing a gang of men to watch it. Under such circumstances it was not only natural but just that he should have applied to a court of equity for relief in the enforcement of his common law remedy.

We have held in several cases that analogous proceedings were no infringement upon the exclusive admiralty jurisdiction of the Federal courts. Thus, in *Leon* v. *Galceran*, 11 Wall. 185, three sailors brought suits in a state court against the owner of a schooner to recover their wages, and had the schooner, which was subject to a lien or privilege in their favor, according to the laws of Louisiana, similar in some respects to the principles of the maritime law, sequestered by the sheriff of the parish. The writ was levied upon the schooner, which was afterwards released upon a forthcoming bond. This was held to be an ordinary suit *in personam* with an auxiliary attachment of the property of the defendant, and no infringement upon the admiralty jurisdiction. Said Mr. Justice Clifford: " They brought their suits in the state courts against the owner of the schooner, as they had a right to do, and, having obtained judgment against the defendant, they might levy their execution upon any property belonging to him, not exempted from taxes or execution, which was situated in that jurisdiction."

In *Steamboat Co.* v. *Chase*, 16 Wall. 522, a steamboat owned by the company ran over a sail boat containing the plaintiff's intestate, and killed him. His administrator brought suit against the company in a state court of Rhode Island, under an act making common carriers responsible for deaths occasioned by their negligence, and providing that the damages be recovered in an action on the case. Defendant took the position that the saving clause must be limited to such causes of action as were known to the common law at the time of the passage of the judiciary act, and as the common law gave no remedy for negligence resulting in death, an action subsequently given by the statute was not a common law remedy. The contention was

held to be unsound.    So, also, in *Schoonmaker* v. *Gilmore*, 102 U. S. 118, it was held that courts of admiralty had no exclusive jurisdiction of suits *in personam* growing out of collisions.

In the case already cited of *Johnson* v. *Chicago &c. Elevator Co.*, 119 U. S. 388, a petition was filed by the elevator company against the owner of a tugboat for injuries done by the jib boom of a schooner in tow of the tug to the wall of plaintiff's warehouse.    The petition prayed for a writ of attachment against the defendant, commanding the sheriff to attach the tug, summon the defendant to appear, and for a decree subjecting the tug to a lien for such damages.    The statute under which the proceedings were instituted gave a lien for all damages arising from injuries done to persons or property by such water craft. It was held that the damage having been done upon the land, there was no jurisdiction in admiralty, and that the suit was *in personam* with an attachment as security, the attachment being based upon a lien given by the state statute.    Said the court : " There being no lien on the tug by the maritime law for the injury on land inflicted in this case, the State could create such a lien therefor as it deemed expedient, and could enact reasonable rules for its enforcement, not amounting to a regulation of commerce."    It would seem that even if the suit had been *in rem* against the vessel, it would have been sustained, as the injury was not one for which an action would have lain in admiralty.

In the case under consideration the suit was clearly one *in personam* to enforce a common law remedy.    It was no more a suit *in rem* than the ordinary foreclosure of a mortgage.    The bill prayed for process against the several defendants; that they be required to answer the bill; that plaintiff be decreed to have a first lien upon the raft for the amount due him ; that the defendants be decreed to pay such amount; that in default of such payment the raft be sold to satisfy the same; and, that in case of such sale, the purchaser have an absolute title, free from all equity of redemption and all claims of the defendants, and that they be debarred, etc.    This is the ordinary prayer of a foreclosure bill.    The decree of the appellate court reversed that of the Circuit Court, and directed a recovery of a specified

amount. It resembles a decree *in rem* only in the fact that the property covered by the lien was ordered to be sold. Such sale, however, would pass the property subject to prior liens, while a sale *in rem* in admiralty is a complete divestiture of such liens, and carries a free and unincumbered title to the property, the holders of such liens being remitted to the funds in the registry which are substituted for the vessel. *The Helena*, 4 Rob. Ad. 3.

The true distinction between such proceedings as are and such as are not invasions of the exclusive admiralty jurisdiction is this: If the cause of action be one cognizable in admiralty, *and* the suit be *in rem* against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, *or* if the suit be *in personam* against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute (sec. 563) of a common law remedy. The suit in this case being one in equity to enforce a common law remedy, the state courts were correct in assuming jurisdiction.

The decree of the Supreme Court of Illinois is, therefore,

*Affirmed.*