## THE WINNEBAGO.

### IROQUOIS TRANSP. CO. et al. v. A. HARVEY'S SONS MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. November 18, 1905.)

#### No. 1,417.

1. MARITIME LIENS—STATE STATUTE—CONTRACTS FOR CONSTRUCTION OF VESSELS.

Contracts for building vessels or for work done or materials furnished in their construction are not maritime, and hence a state statute relating to such contracts, giving liens to the contractors and providing for their enforcement in the state courts, is not invalid, as in derogation of the ad-

141 F.—60

miralty jurisdiction conferred on the District Courts of the United States by the Constitution and the judiciary act of 1789.

[Ed. Note.—Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. COURTS—FEDERAL COURTS—FOLLOWING DECISION OF STATE COURT.

The Michigan water craft act (Comp. Laws, c. 298), which gives a lien to contractors and persons furnishing labor and materials in the construction of vessels, relates to contracts which are not maritime, and its construction by the Supreme Court of the state is binding on the federal courts.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. MARITIME LIENS—STATE STATUTES—JURISDICTION OF STATE COURTS.

The fact that a vessel subject to statutory liens for labor or materials under a state statute has been enrolled and engaged in interstate commerce, and may therefore become subject to superior maritime liens enforceable in a court of admiralty, does not affect the jurisdiction of a state court over a suit to enforce the statutory liens.

4. SAME—CONSTRUCTION OF MICHIGAN STATUTE.

Comp. Laws Mich. c. 298, gives a lien for labor or materials furnished for the building of a vessel, without reference to whether credit is given to the vessel or the owner personally, and the lien exists in either case, unless it is shown that it was waived.

5. SAME.

Under such statute, a lien is given for materials furnished for the purpose of being used in the construction of a particular vessel, and it is not necessary to its enforcement to prove that they were in fact so used.

6. SAME—PAYMENT—TAKING OF NOTES.

The giving of notes by the owner of a vessel under construction to one who was furnishing materials therefor for arbitrary amounts desired by him to be used in raising funds, which notes were not paid and were afterwards returned, did not constitute a payment which deprived the materialman of his right to a lien, where there was no agreement that they were taken as payment.

7. SAME—MATERIALS FURNISHED AFTER LAUNCHING.

A vessel launched, but still under construction, does not become subject to the maritime law because she rests in the water instead of on the land, so as to deprive one who after such launching furnishes materials for her construction of his right to enforce a statutory lien therefor in the state courts.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is a cause which originated in a state court of Michigan, the circuit court for the county of Wayne, wherein the defendant in error sought to enforce against the steamer Winnebago a lien given by a statute of the state for materials furnished for her construction. The steamer was built at St. Clair, Mich., by the Columbia Ironworks, a Michigan corporation, under a contract with John J. Boland and Thomas J. Prindiville, who subsequently organized under the laws of Indiana the corporation, the Iroquois Transportation Company, plaintiff in error here, and assigned the contract to it. This contract required the Columbia Ironworks to construct for, and deliver to, the other party within a designated time a steel steamer of a described size and character for the sum of $95,000, payable by installments during the progress of construction, except the last installment, which was payable on the completion of the vessel; and it was stipulated that a penalty of $50 per diem, but not exceeding in all $3,500, should be paid by the Columbia Ironworks for any delay in completion, and a bonus of the same sum per diem for completion earlier than the stipulated date. While the vessel was in course of construction, the Columbia Iron-

works was also engaged in the building, at their yards, of another vessel of like character. The A. Harvey's Sons Manufacturing Company engaged at Detroit in the business of selling valves, piping, fittings, plumbing material, and the like, furnished the Columbia Ironworks with a quantity of . these materials to go into the construction of the two vessels on orders which were for duplicates of the items required. In general these materials were respectively used in the construction of the vessels for which they were ordered, but a comparatively small portion of the duplicates intended for the vessel now called the Winnebago is not shown to have been actually employed for that purpose. One of the duplicate parts of the articles furnished was charged by the Columbia Ironworks to one of the vessels, and the other half to the other, except that a small amount, $52 worth, was charged to "Building and Equipment Account." But it was. not known to defendant in error that any part of the duplicate of materials furnished for each vessel was appropriated to any other purpose. The last of the articles were furnished July 18, 1903, while the vessel was lying in the water at St. Clair. She was launched on March 21, 1903, but she was not completed until after all the articles had been furnished. On July 18, 1903, she was inspected and enrolled at Port Huron in the name of the Columbia Ironworks as owner, and thereupon the balance of the purchase price, less the forfeit for delay, was paid, and a bill of sale given by the Columbia Ironworks to the plaintiff in error. Five days afterwards a new enrollment was made of the vessel at Chicago, reciting a change of ownership and of districts. The defendant in error had no knowledge for whom the vessel was being built, nor did either of the parties know of the enrollment of the vessel by the Columbia Ironworks at the time when that was done. The vessel made several trips on the Lakes after her enrollment at Chicago. A part of the price of the materials furnished by defendant in error remaining unpaid, this proceeding was commenced under the Michigan water craft act (Comp. Laws, c. 298) beginning with section 10,788, by the filing of the complaint praying for a warrant of seizure and a summons to the owner or master. Upon the seizure of the vessel, a bond was given by the plaintiff in error as owner and the vessel released. The plaintiff in error thereupon, and before the time for its pleading had expired, filed its petition and bond for removal into the Circuit Court of the United States for the Eastern District of Michigan, and the cause was removed accordingly. The plaintiff in error in due time filed its answer, pleading to the merits and denying the validity of said chapter 298 of the statutes of Michigan, upon the ground that it was in violation of the second section of article 3 of the Constitution of the United States, conferring jurisdiction upon the courts of the United States in admiralty. A replication having been filed, the cause came on for trial before the court and a jury. A verdict was rendered for the defendant in error for the sum of $2,434.36. Upon judgment having been entered thereon, the cause was brought here on writ of error.

C. E. Kremer, for plaintiffs in error.

H. B. Graves, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, having stated the case as above, delivered the opinion of the court.

The questions discussed by counsel may be resolved into the following:

1. Whether the Michigan statute, in its application to such a case as this, is in derogation of the admiralty jurisdiction conferred upon the District Courts of the United States by the Constitution and the judiciary act of 1789. It would be superfluous for us to canvass anew the many decisions of the Supreme Court of the United States upon this general subject. This has been so often done by that court that

we may properly assume the leading principles affirmed in its more recent decisions as settled, and proceed to a discussion of the question before us by their light.   Contrary to what was said by Mr. Justice Miller in The Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451, respecting the effect of the act of 1845 upon the admiralty jurisdiction of causes arising on the Great Lakes and connecting rivers, it is to be understood that no part of that act is now in force.   The reason for that conclusion is stated in The Eagle, 8 Wall. 15, 19 L. Ed. 365, and the conclusion is confirmed in The Robert W. Parsons, 191 U. S. 17, 31, 24 Sup. Ct. 8, 48 L. Ed. 73.   We are therefore to be remitted to the original investiture of the admiralty jurisdiction by the Constitution and the judiciary act of 1789 for the ascertainment of its scope and limits.   In the definition of those ordinances by the decisions of the Supreme Court we take it to be settled that the jurisdiction extends to all cases of a maritime nature, whether the right in question is one accorded by the general rules of the admiralty law or is created by legislation; the doctrine being that newly created rights of this nature become parts of the jurisdictional dominion, as in the case of state legislation according a lien for supplies furnished in the home port. But the maritime nature of the subject is always the test of jurisdiction.   And so, while state legislation may create rights which are of such a nature that they may properly be administered by the admiralty courts, such state legislation cannot enlarge the power of those courts by creating rights of which they cannot take cognizance consistently with their principles or with the objects of their institution. These rules are the obvious deductions from the authoritative decisions upon the subject.   Passing from these predicates, we observe that it is also to be accepted as settled law that contracts, whether for the building of ships or for furnishing materials for their construction, are not maritime in their nature, nor are liens given upon ships while in course of construction maritime liens.   This doctrine was affirmed by this court in The John B. Ketchem, 97 Fed. 872, 38 C. C. A. 518, and is supported by many decisions of the Supreme Court.   Some of these are:   Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487; Johnson v. Chicago, etc., Elevator Co., 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447; Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 643, 20 Sup. Ct. 824, 44 L. Ed. 921; The Robert W. Parsons, 191 U. S. 17, 25, 24 Sup. Ct. 8, 48 L. Ed. 73.

It seems to follow by obvious sequence that, in creating liens of this character and conferring upon their own courts the power to enforce them, state legislation does not derogate from the jurisdiction of the admirality courts of the United States.   It may be that in its application to ships already engaged in commerce there would be such derogation, and that to that extent its provisions would not be enforceable.   But that is no valid reason why the statutes should not be given effect so far as they may.   We have, therefore, no occasion to consider whether the remedy provided by the Michigan statute is to be regarded as one strictly in rem, or as one which, like a proceeding in foreign attachment, contemplates the recovery of a judgment against

the owner, and the enforcement of a lien upon his property for its satisfaction. If the contract is not of a maritime nature, it is of no concern to the federal jurisdiction what remedies the state may provide, whether in rem or otherwise. "If," said Mr. Justice Brown, in Knapp, Stout & Co. v. McCaffrey, supra, "a lien upon a vessel be created for a claim over which a court of admiralty has no jurisdiction in any form, such lien may be enforced in the courts of the state. Thus, as the admiralty jurisdiction does not extend to a contract for building a vessel, or to work done or materials furnished in its construction (The Jefferson [People's Ferry Co. v. Beers] 20 How. 393, 15 L. Ed. 961; The Capitol [Roach v. Chapman] 22 How. 129, 16 L. Ed. 291), we held, in Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487, that, in respect to such contracts, it was competent for the states to enact such laws as their Legislatures might deem just and expedient, and to provide for their enforcement in rem." The owner of a ship may make a nonmaritime contract and mortgage his ship to secure it, or it may be seized on mesne or final process; and in both cases the ship may be sold for the satisfaction of the debt on the order of a common-law court without recourse to the admiralty jurisdiction. We therefore think the proceeding was one maintainable in the state court.

2. One ground of defense made by counsel for the plaintiff in error is that the steamer Winnebago was, at the time of her construction and seizure, not intended to be used only in navigating the waters or canals of the state of Michigan; and the question presented and argued is whether the statute intends a vessel exclusively used in navigating the waters of the state, or one which is to be used in such waters, or there and elsewhere, as the business in which she is engaged may require. The construction of the provision of the statute in this regard was presented to the Supreme Court of the state in The City of Erie v. Canfield, 27 Mich. 479, and was decided adversely to the contention which counsel for plaintiff in error now makes; the court holding that the vessel need not be one intended to be exclusively used on the waters of that state. Apparently this settles the question for us, if, as we think, it could make no difference in determining the maritime nature of the transaction, whether the ship was intended to be used wholly in Michigan waters, or elsewhere as well.

3. Another question is presented by the point made that the plaintiff (below) could not recover because it was a subcontractor only, and could not recover, unless there was something due the contractor. But the premise is bad. It rests upon the predicate that the Columbia Ironworks was at work upon, and obtained these materials for, a vessel not its own, but one belonging to the Iroquois Transportation Company; whereas the contrary was the fact. The ownership was in the Columbia Ironworks until she was delivered. This was the ruling made by us in the case of The John B. Ketchum, supra, upon a contract like that upon which this vessel was built, and we see no reason for reconsidering the point.

4. Again, it is urged that, because the vessel was enrolled and licensed and was already engaged in interstate commerce, the seizure

was in violation of the Constitution and laws of the United States. It is said that she had become "a vessel subject to admiralty jurisdiction," which is quite true. And it is further suggested that she might become subject to maritime liens which could only be enforced in the admiralty, which may also be conceded. We are unable to perceive that any relevant consequence ensues upon the fact that the vessel had engaged in interstate commerce. And the fact that she might become subject to maritime liens would not destroy liens already lawfully acquired. It is true she might become subject to maritime liens which would be superior to the existing lien, and that such liens would have to be enforced in the admiralty. But that possibility does not defeat the enforcement by a state court of the nonmaritime lien to which she is subject. How else is the owner of the latter to obtain his remedy? It may be the vessel will never become subject to maritime liens at all; and, if so, the holder of the existing lien may never have even the privilege of proving his claim in some cause instituted for another purpose. But no such supposed embarrassment has yet occurred. And they are as yet imaginary. But suppose such other liens should attach. That should not prevent the enforcement of the earlier lien in the proper court. If the holder of the earlier lien delays his action, he subjects himself to the danger of superior liens becoming fastened, and the enforcement of his own lien in the state court must leave the vessel subject to the superior liens of which the state court cannot take cognizance. If occasion requires, and the admiralty court enforces the superior liens, it is in no wise obstructed by the action of the state court, and the title under a decree of the former court would defeat the title gained under the decree of the state court. The case of Moran v. Sturgis, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, is a good illustration of this subject. There is no difficulty other than such as may happen in case one court should take and have possession of the vessel at a time when the other should require it; but that is an incident common along all the lines of concurrent proceedings in the state and federal courts, and gives no ground for the denial of jurisdiction to either.

5. Again, counsel for plaintiff in error contends that the supplies were not furnished on the credit of the vessel, but on the credit of the Columbia Ironworks. The statute declares a lien in favor of the party furnishing material for the building of the ship. But it does not contemplate that credit shall not be given to the owner, or that he shall not be liable personally for the debt. It is possible, no doubt, for the furnisher to waive the lien; but, unless he' does so, the lien exists. The burden of showing the waiver rests upon the party who alleges it. There is nothing in the bill of exceptions which would justify a finding that the lien was waived.

6. It is contended also that the Michigan statute requires as a condition for a lien that the materials should have been in fact used in and about the construction of the vessel, and that the mere fact that materials were supplied for that purpose is not sufficient. This question was presented in the case of The James H. Prentice (D. C.) 36

Fed. 777, which was decided by Judge Brown, now one of the Justices of the Supreme Court. It was held by the learned judge, upon a full and very thorough consideration of the question, that the furnishing of the material for the purpose of being so used was the test supplied by the statute. We should feel strongly inclined to follow that decision, if the question stood in doubt. But the reasons stated in the opinion are convincing that the decision was correct. And it is supported by the preponderance of opinion in the state courts upon similar provisions in the local statutes.

7. It appears that, at one time during the course of the transactions, the Columbia Ironworks gave two notes for amounts desired by the defendant in error to use in raising funds. These notes were not for any payment particularly stipulated in the contract, but for arbitrary amounts. The notes were never paid, and were afterwards returned to the maker. There was no evidence which tended to show that these notes were received upon an express agreement that they should be taken as payment, and the presumption is to the contrary. See The Kimball, 3 Wall. 37, 18 L. Ed. 50; The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; The Atlas S. S. Co. v. Columbia Land Co., 102 Fed. 358, 42 C. C. A. 398, and our own decision, Pflueger v. W. Lewis, etc., Co., 134 Fed. 28, 67 C. C. A. 102.

8. As has been stated, the vessel was launched on March 21, 1903. But she was not completed before July 19, 1903. Some of the materials for her construction were furnished in the interim; and it is contended that for these there could be no recovery. This distinction between materials furnished before and after the launching of the vessel was not taken in the court below, and seems to have been an afterthought. However, we are disposed to say that we do not think it sound. A ship launched, but still in the course of construction, does not become subject to the maritime law, because she rests in the water rather than on land, and does not become so until she is put into use as an agency of commerce, or, at least, until she is fitted for that purpose; and she ceases to possess a maritime character when she is permanently withdrawn from such service. City of Detroit v. Grummond, 121 Fed. 963, 971, 58 C. C. A. 301, and cases there cited.

Our conclusion is that there is no error, and that the judgment should therefore be affirmed, with costs.