## AARON LINDSTROM v. MUTUAL STEAMSHIP CO.[1]

March 3, 1916.

Nos. 19,530—(135).

**Sovereignty of state over vessel on navigable water.**

1. Territorial sovereignty of a state extends to a vessel of the state though it is upon navigable waters.

**Workmen's Compensation Act — interstate commerce by water not excepted.**

2. The Minnesota Workmen's Compensation Act is general in its terms, and it applies to all cases within the territorial jurisdiction of the state save those expressly excepted. The act excepts cases arising from interstate commerce by railroad. Those arising from interstate commerce by water are not excepted.

**Act valid in absence of Federal statute.**

3. The act in its application to such employment is not invalid as an interference with interstate commerce. Congress has not legislated upon that subject as to interstate commerce by water, and until it does so such legislation is within the province of the several states.

**Admiralty jurisdiction.**

4. The injury sustained in this case was sustained upon the navigable waters of the United States. This brings the case within the jurisdiction of the Federal courts of admiralty.

**Remedies open under Judicial Act of 1789.**

5. By virtue of the clause in the Judicial Act of 1789, saving to suitors the right of a common-law remedy where the common law is competent to give it, a party so aggrieved may (1) proceed *in rem* in admiralty; (2) bring suit *in personam* in admiralty; (3) resort to his remedy at law *in personam* in a state court, or (4) in the United States Circuit Court, if there are parties proper to give such jurisdiction.

**Application of that act.**

6. In its application to this case the important effect of the saving clause is that it saves the right to proceed in the state courts by a suit *in personam* to redress wrongs committed at sea, although the person

[1] Reported in 156 N. W. 669.

injured had the concurrent right to proceed *in rem* in a Federal court of admiralty.

, **Action in state court governed by state law.**

7. When the action is brought in a state court it must be determined according to state laws and not acording to the laws of admiralty.

**Statutory modification of common-law rule.**

8. It is competent for the state to modify by statute its common-law rules of liability in their application to such cases, so long as the modification does not amount to a regulation of commerce or an interference with some paramount Federal law.

**Workmen's Compensation Act governs.**

9. Since the adoption of the Minnesota compensation act, the question of liability in such cases, and the amount thereof, are to be determined by the compensation act.

Action in the district court for St. Louis county to recover $5,000 for personal injury received while employed as a laborer by the Berwind Fuel Company in unloading a cargo from the hold of a steamship owned by defendant, and $290 for the cost of hospital care and the loss of wages. From an order, Dancer, J., sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*Wharton & Wharton,* for appellant.

*Washburn, Bailey & Mitchell,* for respondent.

HALLAM, J.

The complaint alleges the following facts:

Defendant is a Minnesota corporation operating the steamship William Livingstone on the Great Lakes, between Duluth, its home port, and ports outside of Minnesota. The Berwind Fuel Company is an employer owning a dock at Duluth. On June 9, 1914, plaintiff was in the employ of the fuel company engaged in unloading a cargo of coal from said vessel on to the fuel company's dock. While working in the hold of the vessel he was injured through the negligence of defendant. He brings this common-law action to recover damages. Defendant demurred and the demurrer was sustained.

The demurrer raises one main question; that is, does the Minnesota Workmen's Compensation Law (G. S. 1913, § 8195, et seq.) apply to

such a case. If so, it is conceded the demurrer was properly sustained. We are of the opinion that the Minnesota compensation law does apply.

1. No question of territorial jurisdiction arises, for the territorial sovereignty of the state of Minnesota extends to a vessel of the state, though it is upon navigable waters (Crapo v. Kelly, 16 Wall. 610, 21 L. ed. 430; The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. ed. 264), even upon the high seas. International Nav. Co. v. Lindstrom, 123 Fed. 475; Thompson Towing & Wrecking Assn. v. McGregor, 207 Fed. 209, 124 C. C. A. 479; The Bee, 216 Fed. 709.

No question of conflict of state laws arises. Duluth being the home port, and also the port where the injury occurred, the laws of no state other than Minnesota could apply.

2. There is no serious doubt that the terms of the statute are broad enough to cover the case. The act is general in its terms and it applies to all cases within the territorial jurisdiction of the state which are not excepted. Section 8202 excepts "any employer acting as a common carrier when engaged in interstate or foreign commerce by railroad," and "any employee of such common carrier injured or killed while so engaged." No other exception of consequence here is found in the act. This section does not, either in terms or by any possible implication, except carriers by water or the employees of such carriers.

The negligence that caused the injury was not that of plaintiff's employer, but of another employer who is within the terms of the act. The compensation act applies to such a case. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71.

3. Nor is the act invalid as an interference with interstate commerce. The right of Congress to pass laws governing the liability of employers engaged in interstate commerce for injuries sustained by their employees while engaged in such commerce, to the exclusion of state legislation upon that subject, is unquestioned, and as to railroads Congress has enacted some applicable laws. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A. (N.S.) 44. But Congress has passed no laws regulating the liability of interstate carriers by water, at least not as to any matters here involved, and until Congress legislates upon this subject it is within the province of the several states to do so. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct.

169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44, Stoll v. Pacific Coast S. S. Co. 205 Fed. 169, 177.

4. The only doubtful question in the case is whether the Minnesota compensation act is, in its application to this case, an infringement upon the Federal jurisdiction over the subject of admiralty. The Constitution of the United States extends the power of the Federal courts "to all cases of admiralty and maritime jurisdiction." Article 3, § 2. Section 9 of the Judiciary Act of 1789 saves to suitors "in all cases, the right of a common-law remedy, where the common law is competent to give it." 1 U. S. St. at Large, p. 77. This case hinges on the construction of this saving clause.

The injury was sustained aboard a ship on navigable waters of the United States. This brings the case within the jurisdiction of the Federal courts of admiralty. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. ed. 1208, 51 L.R.A.(N.S.) 1157. Just as clearly it is subject to the common-law jurisdiction of the courts of this state. The Constitution and the statute conferred upon the national judiciary the admiralty and maritime jurisdiction exactly as it existed in the jurisprudence of the common law. When the admiralty jurisdiction was exclusive, it remained so; when it was concurrent, it remained so. If the suit be in rem against the thing itself, the proceeding is essentially one in admiralty, is exclusively cognizable in admiralty courts, and the states cannot confer upon their own courts the cognizance of such cases. But the states did retain jurisdiction in cases of which the cognizance was previously concurrent in the courts of common law, that is, of suits in personam against an individual defendant. "This latter class of cases can be no more deemed cases of admiralty and maritime jurisdiction than cases of common-law jurisdiction." Taylor v. Carryl, 20 How. 583, 598, 15 L. ed. 1028; Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 648, 20 Sup. Ct. 824, 44 L. ed. 921. Accordingly it is said in The Belfast, 7 Wall. 624, 645, 19 L. ed. 266, that proceedings in a suit at common law on a maritime contract are precisely the same as in suits on contracts not regarded as maritime, wholly irrespective of the fact that the injured party might have sought redress in the admiralty."

5. By virtue of the saving clause a party so aggrieved may (1) proceed *in rem* in admiralty if a maritime lien arises; (2) bring suit *in personam* in an admiralty jurisdiction; (3) resort to his remedy at law in a state court, or (4) in the United States court at law, if there are parties proper to give such jurisdiction. Steamboat Co. v. Chase, 16 Wall. 522, 534, 21 L. ed. 369.

It has been said that what is reserved to a suitor "is not a remedy in the common-law courts, but a common-law remedy." The Moses Taylor, 4 Wall. 411, 431, 18 L. ed. 397; Moran v. Sturges, 154 U. S. 256, 276, 14 Sup. Ct. 1019, 38 L. ed. 981. This is true enough, but it is not very helpful here. This language means, on the one hand, that the saving clause does not confer upon common-law courts the power to entertain an admiralty suit *in rem,* and, on the other hand, that some remedies are reserved that were enforceable at common law, not in a common-law court but in a court of equity, and also some remedies recognized at common law, like carriers' liens, which need not be enforced in court at all. Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 20 Sup. Ct. 824, 44 L. ed. 921.

6. In its application to this case, the important effect of the saving clause is, that it saves the right of a party to proceed in the state courts *in personam* "according to the course of the common law" to redress wrongs committed at sea, although the person injured had the concurrent right to proceed *in rem* in the Federal court of admiralty. Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 648, 20 Sup. Ct. 824, 44 L. ed. 921; Rounds v. Cloverport Foundry & Machine Co. 237 U. S. 303, 35 Sup. Ct. 596, 59 L. ed. 966, Steamboat Co. v. Chase, 16 Wall. 522, 21 L. ed. 369; Reynolds v. Steamship Favorite, 10 Minn. 190 (242); Stapp v. Steamboat Clyde, 43 Minn. 192, 45 N. W. 430; Benedict, Adm. § 128.

7. The contention of the plaintiff is that, when action is brought in the state court, the rules of liability are the same as though the proceeding were in admiralty. In other words, the contention is that where a remedy is sought in a state court that court enforces, not the laws of its own jurisdiction, but the general laws of admiralty, much as the courts of one state, in enforcing liabilities which arose in another, will apply the laws of the state where the cause of action arose, and, since the state has no right to modify or amend the general maritime law, it is con-

tended the Minnesota compensation law is here inoperative. This is really the crucial question in the case. It is a Federal question, and we think that it is settled adversely to plaintiff's contention by the decisions of the United States Supreme Court.

It is well understood that in the two courts, that is, courts of admiralty and courts of law, not only is the course of proceeding in many respects different, but also "the rules of decision are different." Atlee v. Packet Co. 21 Wall. 389, 395, 22 L. ed. 619. A striking instance of this difference is the rule for estimating damages in suits for personal injury. In the common-law courts the defendant must pay all the damages or none. If there has been contributory negligence on the part of the plaintiff, he can recover nothing. In the admiralty court, where there has been contributory negligence, the entire damages must be equally divided between the parties. It is held that when the action is at law the rule of liability prevailing at law, and not the admiralty rule, must be applied. It is also held that the principles which determine the existence of mutual fault in admiralty, are not precisely the same as those which establish contributory negligence at law, but that "each court has its own set of rules for determining these questions, which may be in some respects the same, but in others vary materially." Atlee v. Packet Co. 21 Wall. 389, 396, 22 L. ed. 619; The Max Morris, 137 U. S. 1, 10, 11 Sup. Ct. 29, 34 L. ed. 586; and it is held that if a person injured, though he might proceed in admiralty, elects to sue at law, the common-law rule as to contributory negligence must be applied, and he cannot recover "though defendant were negligent, if it appeared that his own negligence directly contributed to the result complained of." Belden v. Chase, 150 U. S. 674, 691, 14 Sup. Ct. 264, 37 L. ed. 1218. If this is the true principle to be applied as to contributory negligence, it must be the true principle to be applied as to all of the rules of law upon which liability depends.

On similar principles it was held in Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 20 Sup. Ct. 824, 44 L. ed. 921, that a bill in equity to foreclose a common-law lien upon a raft for towage was a proceeding to enforce a common-law remedy, and that since the supreme court of Illinois had held that plaintiff had a possessory lien upon the raft, and that he had possession, the Federal court "should defer to the opinion

of that court in these particulars, as they are local questions dependent upon the law of the particular State."

We take it these Federal cases establish well the rule that when the action is brought in a state court it must be determined according to state law, and not according to the law of admiralty.

8. As the state court in administering its remedy applies its own rules of liability, it must enforce such rules of liability as are in force in the state, whether they arise from the common law or from statute, and the state may modify by statute its common-law remedies so long as such statutes do not amount to regulation of interstate commerce or an interference with some paramount Federal law. In Steamboat Co. v. Chase, 16 Wall. 522, 21 L. ed. 369, defendant took the position that the saving clause must be limited to such causes of action as were known to the common law at the time of the passage of the Judiciary Act. The contention was held to be unsound. Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 646, 20 Sup. Ct. 824, 44 L. ed. 921. And in The Hamilton, 207 U. S. 398, 404, 28 Sup. Ct. 133, 52 L. ed. 264, it was said that "as the state courts in their decisions would follow their own notions about the law and might change them from time to time, it would be strange if the State might not make changes by its other mouthpiece, the legislature. The same argument that deduces the legislative power of Congress from the jurisdiction of the National courts, tends to establish the legislative power of the State where Congress has not acted;" and state courts have used similar language. Walter v. Kierstead, 74 Ga. 18, 22; Dougan v. Champlain Transportation Co. 56 N. Y. 1, 5; Stewart v. Harry, 3 Bush. (Ky.) 438.

This doctrine is further illustrated by other Federal decisions.

In Rounds v. Cloverport F. & M. Co. 237 U. S. 303, 35 Sup. Ct. 596, 59 L. ed. 966, it is held that a common-law court, as auxiliary to the remedy *in personam*, may enforce a statutory attachment against the vessel itself.

In Leon v. Galceran, 11 Wall. 185, 192, 20 L. ed. 74, it was held that in the absence of legislation by Congress it is competent for a state to create such liens upon vessels as its legislature may deem just and expedient, not amounting to a regulation of commerce, and to enact rea-

sonable rules and regulations prescribing the mode of their enforcement.

In The Lottawanna, 21 Wall. 558, 580, 22 L. ed. 654, it was said that, so long as Congress does not interpose to regulate the subject, the rights of materialmen furnishing necessaries to a vessel in her home port may be regulated by state legislation. It was said that the contract for furnishing such necessaries is a maritime contract, and that the states cannot alter the limits of maritime jurisdiction, nor confer it upon the state courts so as to enable them to proceed *in rem* for the enforcement of liens created by such state laws, but that they can authorize the enforcement thereof by "common-law remedies, or such remedies as are equivalent thereto."

It is held that a statute of a state giving to the next of kin of a person an action on the case for damages for the injury caused by the death of such person, is a valid and enforceable statute, as applied to maritime torts. It was first held that such a statute was enforceable in an action in the state courts, "whether such a suit may or may not be maintained in the admiralty courts." Steamboat Co. v. Chase, 16 Wall. 522, 532, 21 L. ed. 369. Later indeed it was held that such a statute was enforceable even in admiralty. The Hamilton, 207 U. S. 398, 28 Sup. Ct. 1313, 52 L. ed. 264. See also The City of Norwalk, 55 Fed. 98, 106, where the applicable principles are fully discussed.

We accordingly hold that where liability is asserted in the courts of this state against the owner of a vessel of this state to redress a maritime tort, the question of whether liability exists is to be determined by the common law of this state, as the same has been modified by the valid general statutes of the state, and, since the compensation act is now the law of this state, substituted for all common-law remedies before existing, that statute furnishes the rule upon which the liability and the extent of it are to be determined.

The conclusion we have reached is sustained by Walker v. Clyde S. S. Co. 215 N. Y. 529, 109 N. E. 604, where it is held that the compensation law of New York was applicable to a precisely similar situation.

The same result was reached in Kennerson v. Thames Towboat Co. (Conn.) 94 Atl. 372, where it is said that the common law remedies reserved by the Judiciary Act of 1789 "embrace all methods of enforcing

rights and redressing injuries known to the common or statutory law." Stoll v. Pacific Coast S. S. Co. 205 Fed. 169, is also in harmony with our views. See also McDonnell v. Oceanic Steam Nav. Co. 143 Fed. 480, 74 C. C. A. 500; The Fred E. Sander, 212 Fed. 545.

The only authority we find to the contrary is a well-considered opinion of Killits, District Judge, in Schuede v. Zenith S. S. Co. 216 Fed. 566, holding that the compensation law of Ohio was not applicable to the case of a seaman employed under a maritime contract who was injured in the course of his employment.     It was held that the maritime law as to liability was part of his contract, and that that law determined his rights though the action was at law.     So far as that decision is inconsistent with the views herein expressed, we cannot follow it.

Workman v. New York City, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. ed. 314; The Henry B. Smith, 195 Fed. 312; The Fred E. Sander, 208 Fed. 724; and The Thielbek, 211 Fed. 685, are distinguishable from the case at bar, since they were actions or proceedings in admiralty and not at law.

Order affirmed.