FREDERICK RUSSEL

*v.*

MYERS EXCURSION AND TRANSFER COMPANY.

[Filed October 14th, 1907.]

1. *2 Gen. Stat. p 1961* is valid in so far as it creates a lien on a vessel for supplies and repairs, but is invalid so far as it attempts to provide for the enforcement of the lien by proceedings in the nature of proceedings *in rem* in admiralty, as the lien is maritime, and under the constitution and laws of the United States the jurisdiction of the federal admiralty court of such proceedings is exclusive.

2. The recognition by the court of chancery of this state of a lien for coal furnished a vessel on a fund in the hands of receivers arising from a sale of the vessel, and the ordering of that fund paid over to the lienholder, is not an exercise by that court of the jurisdiction to enforce liens

by proceedings *in rem,* which is vested exclusively in the courts of admiralty.

3. A lien claimed for coal furnished for the use of a steam tug is within 2 *Gen. Stat. p. 1961,* giving a lien for supplies, provisions and stores furnished for the use of a ship or vessel.

In insolvency. On appeal of the Consolidation Coal Company from adjudication of receivers.

*Messrs. Collins & Corbin, Mr. Herbert Barry* and *Mr. Morton G. Bogue,* for the appellant.

*Mr. Charles E. Hendrickson, Jr.,* and *Mr. John Griffin,* for the receivers.

STEVENSON, V. C.

By stipulation the appeal from the adjudication of the receivers denying a preference to the claim of the appellant has been submitted to this court "upon the petition of appeal with copy of proof of claim thereto annexed, the answer of the receivers and the affidavit submitted by the petitioner (appellant) and the original invoices submitted by the receivers." The appellant's claim is for coal furnished for the use of the steam tug "Neptune" of the insolvent corporation prior to the insolvency, amounting to $462, with interest from September 7th, 1905. It appears from the answer to the petition of appeal and the briefs of the parties which have been submitted and which in some respects add to the facts upon which the case has been argued and is to be decided, that the "Neptune" was sold under process issuing out of the United States district court for the southern district of New York in a proceeding *in rem* in admiralty, and that after paying the claims of the libellants a surplus was paid over to the receivers appointed in this cause amounting to $364.05. The appellant claims to have a lien upon this entire sum under the provisions of our New Jersey statute enacted in 1857 and entitled "An act for the collection of demands against ships, steamboats and other vessels." *2 Gen. Stat. p. 1961.* The receivers, while allowing the appellant's claim of $462 and in-

13

terest as a general unsecured claim, and as such entitled to a dividend, have adjudicated adversely to the preferential lien claimed as aforesaid and from such adjudication this appeal is taken.

My conclusion is that the action of the receivers in refusing to recognize the lien claimed was erroneous and that the appellant is entitled to the fund.

1. Any extensive discussion of the law of this case is rendered unnecessary by the elaborate opinion of Mr. Justice Gray in the case of *"The Glide," 167 U. S. 606, 42 Law Ed. 296 (1896)*, to which there was no dissent. It is established beyond question that the above-cited statute is as stated by Mr. Justice Gummere in the case of *Hankins v. Cox & Sons' Co., 63 N. J. Law (34 Vr.) 512*, "invalid to the extent that it attempts to provide for the enforcement of the lien given by it for making repairs to a vessel in its home port by proceedings *in rem* instituted in a state tribunal, and that such proceedings when so instituted are void." In the same opinion, however, the act is declared to be unobjectionable "in some of its provisions." These statements are taken from a unanimous decision of our supreme court, and they accord with the federal decisions which now are recognized as precedents.

In this case the appellant has a lien under our statute, but that lien can be enforced by proceedings *in rem*, which are the equivalent of proceedings *in rem* in admiralty only by the federal admiralty court. It is useless to discuss the anomalous situations which have been created or evolved through the series of conflicting federal decisions set forth and discussed in the opinion of Mr. Justice Gray above referred to. It seems to be true to-day that it is competent for a state legislature to create that form of property which is called a lien upon a vessel for supplies and repairs furnished in its home port, but it is not competent for that legislature to provide for the enforcement of that lien by a proceeding strictly *in rem*. The right of the appellant, however, being "maritime in its nature," is cognizable by a federal admiralty court, and thereupon that court may enforce the lien created by the local statute.

2. The only question in this case is whether the recognition

of this lien by this court upon the application of the appellant is or is not the exercise by this court of a jurisdiction which, under the constitution and laws of the United States, is vested exclusively in the federal admiralty court. I am unable to see that when this court is asked to recognize the appellant's lien on this fund and order the fund paid over to the appellant on account thereof, that it is asked to do anything in the slightest degree akin to exercising jurisdiction in admiralty.

The fallacy which I think vitiates the argument of the respondent consists in the assumption that the appellant never had a valid lien on this vessel which this court could take cognizance of or in any way enforce. The statute, so far as it gives the lien, is expressly held to be constitutional and valid both by the decisions of the supreme court of the United States and of the supreme court of New Jersey cited above. This court must at all times recognize these liens under the statute. The only disability resting upon the court and the legislature of the state consists of the interdiction under the federal constitution of the creation or prosecution of any course of procedure for the enforcement of the lien which in effect is the same thing as a proceeding *in rem* in admiralty. The *procedure* prescribed by our statute has been adjudicated to be of the character above stated, and therefore the attempt of our legislature to provide such a procedure was wholly void. When, however, the existence of this lien comes up in any court in New Jersey it must be recognized, although such court cannot enforce it in what amounts to a proceeding *in rem* in admiralty.

The situation, therefore, seems to be this, that this court must adjudicate that the appellant had a valid lien on this vessel. This lien was in one way enforceable only through the federal admiralty court, but it was a property right which all courts, both federal and state, must recognize, and which the state courts must enforce in all ways excepting the one which, under the constitution and laws of the United States, they are not allowed to follow.

When the vessel was sold under the libels filed in the federal admiralty court in New York upon a well-settled equitable principle, the appellant's lien was transferred to the fund. The fund

then was paid out of the admiralty court into the hands of the receivers of the insolvent corporation, which was the original owner of the vessel. The money was not merged in the general assets of the insolvent corporation by such payment. The lien of the appellant followed the fund and is now attached to it. This court is not asked to exercise any of the powers which are exercised by an admiralty court in seizing a vessel upon process *in rem* and affecting sale thereof. In recognizing this lien and ordering the payment of this fund to the appellant no action is taken affecting navigation or commercial transactions upon navi gable waters. The lien being valid, and this court being obliged to recognize it, all that follows is a mere administrative order which affects a sum of money now within the control of this court. The making of such an order does not involve the exercise of any of the powers which are vested exclusively in the federal admiralty courts. In fact the proceeding in this court resulting in such order is not a proceeding strictly *in rem;* it is a proceeding *in personam* analogous to a foreclosure suit in which the parties have appeared and have litigated their respective claims in respect of a *res* within the custody of the court, or subject to its control. The order which the court makes is binding upon the parties litigant in this court and elsewhere. It compels the receivers personally to pay a sum of money which is in their possession.

3. Counsel for the respondents argues that the lien claimed in this case is not within our statute and is not enforceable in the federal admiralty court, but I am unable to accept these views. On the contrary, it seems clear to me that the appellant's claim is expressly made a lien on the vessel by our statute; that such lien is enforceable by the federal admiralty court through its own exclusive procedure strictly *in rem,* and that such lien is also enforceable in this court in all other ways in which a court of equity can act in regard to such matters. No question of procedure where the legislature has not effectually prescribed any mode of procedure arises in this case. Where there is a valid lien on a fund within the control of a court of equity, such court will have no difficulty in respect of the method of enforcing the lien.