AMERICAN TRUST CO. v. W. & A. FLETCHER CO.

BERWIND–WHITE COAL MINING CO. v. SAME.

(Circuit Court of Appeals, First Circuit. August 18, 1909.)

Nos. 821, 822.

1. MARITIME LIENS (§§ 60, 74*)—JURISDICTION—FEDERAL AND STATE COURTS.
    (1) For foreign repairs and supplies for a vessel there arises a lien, apart from statute, enforceable in rem in a court of admiralty, and not so enforceable in the state courts. (2) For domestic repairs and supplies there is no lien, apart from statute, except a possessory lien; but a state statute may give a maritime lien for them, enforceable in rem in a court of admiralty, and not so enforceable in the state courts. (3) For construction there is no lien apart from statute; but a state statute may give a lien, not ordinarily enforceable, in rem or otherwise, in a court of admiralty, but enforceable in the state courts by proceedings which are undistinguishable from proceedings in rem, and also enforceable under certain conditions in federal courts.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 98, 111; Dec. Dig. §§ 60, 74.*
    Liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

**2.** SHIPPING (§ 32*)—MORTGAGE OF VESSELS—AFTER-ACQUIRED PROPERTY CLAUSE.

A mortgage given by a steamship company, covering all the vessels it then owned and all it should afterwards acquire, cannot bind after-acquired vessels, as against liens given by statute for their construction.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 105, 106; Dec. Dig. § 32.*]

**3.** MARITIME LIENS (§ 71*)—STATUTORY LIENS—SCOPE AND MODE OF ENFORCEMENT.

Gen. St. N. J. 1895, p. 1960 (Act March 20, 1857 [P. L. p. 382]; Act March 20. 1878 [P. L. p. 158]; Act April 24, 1884 [P. L. p. 248]), which provides that a debt contracted for the building, repairing, fitting, furnishing, or equipping of a vessel "shall be a lien upon such ship or vessel * * * and continue to be a lien on the same until paid," as construed by the courts of the state, creates a positive lien, enforceable in any court of equity by appropriate proceedings; the procedure prescribed therein not being exclusive.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 109; Dec. Dig. § 71.*]

**4.** MARITIME LIENS (§§ 17, 74*)—STATUTORY LIENS—CONSTRUCTION OF VESSEL —ENFORCEMENT OF LIEN.

Gen. St. N. J. 1895, p. 1960 (Act March 20, 1857 [P. L. p. 382]; Act March 20, 1878 [P. L. p. 158]; Act April 24, 1884 [P. L. p. 248]), which makes a debt contracted for the building of a vessel a lien thereon, which shall continue a lien until paid, is constitutional and valid, and applies to vessels owned outside of the state, but the unfinished hulls of which were brought therein for completion by equipment with machinery, and gives the builder a right of property in such vessels, which follows them into another jurisdiction, and is there enforceable according to the rules of the chancery courts, where the statute is not in conflict with the public policy of the state in which it is so sought to enforce it.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 22, 111; Dec. Dig. §§ 17, 74.*]

Appeals from the Circuit Court of the United States for the District of Maine.

For opinion below, see 166 Fed. 782.

Avery F. Cushman (Elmer P. Howe and William A. Sargent, on the brief), for appellant American Trust Co.

Alfred H. Strickland, for appellant Berwind-White Coal Mining Co.

Harrington Putnam and Edward S. Dodge, for appellee W. & A. Fletcher Co.

Brandeis, Dunbar & Nutter and Robinson, Biddle & Benedict, amici curiæ.

Before COLT and LOWELL, Circuit Judges, and BROWN, District Judge.

LOWELL, Circuit Judge. The Steamship Company, a Maine corporation, being concerned in the operation of steamships, on May 16, 1905, mortgaged its property to the Trust Company, a corporation of Massachusetts. This mortgage was stated to cover after-acquired property. It was recorded in the custom house at Bath, Me. At some time in 1905 or 1906 the Steamship Company contracted for

the building of the steamers Yale and Harvard. The hulls were constructed in Pennsylvania, and were afterwards brought at different times to the Fletcher Company's yard at Hoboken, N. J., where, under contract between the Steamship Company and the Fletcher Company, they were supplied with engines and other machinery and fittings. Before they were completed they were enrolled in Bath, Me.; the Yale on May 23, 1907, and the Harvard on August 12th. On May 25, 1907, the Yale was expressly conveyed by the Steamship Company to the Trust Company by an instrument making it subject to the mortgage of 1905. This instrument was immediately recorded at Bath. The Harvard was conveyed by a like conveyance, likewise recorded. The steamers were thereafter fitted up and employed in navigation, but there remained a balance for work done upon them, due from the Steamship Company to the Fletcher Company. A creditors' bill was filed against the Steamship Company January 29, 1908, in the Circuit Court for the district of Maine, and a receiver was appointed by that court. Ancillary proceedings were had in Massachusetts and in the Southern district of New York. The receiver took possession of the Yale and Harvard, which were then laid up at Boston, Mass., for the winter of 1907–08. In the summer and autumn of 1908 they were run by the receiver between Boston and New York. The Fletcher Company brought a petition in the Circuit Court for Maine to enforce a lien alleged to arise in its favor upon the Yale and Harvard under the statutes of New Jersey. In that proceeding the Trust Company intervened, as claiming rights in the steamers superior to those of the Fletcher Company. The Fletcher Company's petition was thus resisted, both by the mortgage creditor and by unsecured creditors. The Circuit Court granted the prayer of the petition, and the Trust Company brought the case here by way of appeal.

The case before us is concerned with an alleged lien upon vessels. At the risk of declaring commonplaces, we start from first principles. At common law the builder or repairer, like other mechanics, had a possessory lien upon the ship. "A shipwright, indeed, who has taken a ship into his own possession to repair it, is not bound to part with the possession until he is paid for the repairs, any more than any other artificer. But if he has once parted with the possession, or has worked upon it without taking possession, he is not deemed a privileged creditor, having any claim upon the ship itself." The General Smith, 4 Wheat. 438, 443, 4 L. Ed. 609. The objection supposed to lie against secret liens is not applicable to these possessory liens. They are not secret, as they are advertised by the lienor's possession. The purchaser of the chattel takes title subject to them. By the maritime law, on the other hand, a lien existed for the construction, supply, and repair of a vessel having an application more extended. It was not possessory. Indeed, the maritime lien was deemed to be given in order that a vessel might go on its way unembarrassed by the lienor's attempt to obtain immediate payment. The origin of this lien we need not investigate. Where it exists, it prevails over the rights of a bona fide purchaser for value. It follows the ship apart from possession. It is not divested by a subsequent sale. It may prevail even over a

prior sale or mortgage, and it has a fixed order of preference in payment as compared with other maritime liens, such as those for seamen's wages, general average or collision. It has the inconvenience of a secret lien, but the policy of the law deems the inconvenience less important than the advantage which the lien secures to navigation.

The general maritime lien for construction, repairs, and supplies has been recognized very imperfectly by the law of England, and even by that of the United States. In the English courts questions of jurisdiction were long confused with questions of substantive law, until all difference was lost sight of. Even the courts of the United States, though having a broader knowledge of the admiralty law, did not emerge at once from English limitations and inconsistencies. See the historical remarks in The Underwriter (D. C.) 119 Fed. 713. All refinements of the Anglo-American doctrine being laid aside, the lien is held to exist here only for supplies furnished in a foreign port, those which we may call for convenience foreign repairs and supplies. In respect of these, the lien has the incidents of the maritime lien above described.

The convenience and justice of a lien for the construction of a vessel and for its domestic repair and supply have been so generally recognized, however, that many of the states, by statute, have given a lien to the builder and to the domestic repairer and supply man. Stimson's American Statute Law, § 4643. These statutes vary considerably in the nature and rank of the lien given. Many of them require some record in order that the lien may be preserved. Ordinarily the work must be done within the state (McDonald v. The Nimbus, 137 Mass. 360); but not always (Ward v. Willson, 3 Mich. 1). In all cases, however, the lien exists apart from possession. The effect given by the federal courts to state statutes, fixing liens upon a vessel, is anomalous. The contract for domestic repairs and supplies is said to be maritime, though of itself it creates no maritime lien. The state statute, operating on the maritime contract, is held to create a maritime lien, enforceable in a court of admiralty by its peculiar process, and of equal rank with the strictly maritime lien for foreign supply and repairs given by the admiralty law. Jones on Liens, § 1772. Like the latter, it is unconnected with possession, enforceable without regard to the locality of the court, and indestructible by private sale. It imports a tacit hypothecation of the vessel, it is a jus in re, it accompanies the property into the hands of a bona fide purchaser, and it is enforceable in a court of admiralty by process in rem. Whatever be the provisions of the state statute, they cannot be made effective to give a state court jurisdiction to enforce this lien by proceedings of this sort. A proceeding by way of attachment, summons to the owner, if known, and sale of the vessel thereunder, has been held to be thus excluded from the state courts in the enforcement of a lien for domestic repairs and supplies. "The form of proceeding against the vessel, provided for in the statute of Massachusetts, now in question, is clearly in the nature of admiralty process in rem, and is undistinguishable from the proceedings, provided for in statutes of other states, which have been held by this court

to be exclusively within the admiralty jurisdiction of the courts of the United States. The lien upon the vessel is created as soon as the money is due for labor performed or materials furnished, and continues until the debt is satisfied, unless the lien is dissolved by failure to record a statement of the claim, as required by statute. The petition is to be served by an attachment of the vessel, and a summons to the owners, if known. A dissolution of the attachment does not dissolve the lien, and any number of persons having such liens upon the same vessel may join in one petition to enforce them." The Glide, 167 U. S. 606, 623, 17 Sup. Ct. 930, 936, 42 L. Ed. 296.

The cause of the want of jurisdiction in the state courts to enforce by process in rem the lien for domestic supplies should be noted. That a state statute cannot provide for this enforcement in a state court arises, not from any general infirmity in the statute, but solely because of the exclusive gift to the federal courts of judicial power in "all cases of admiralty and maritime jurisdiction." Where this exclusive federal jurisdiction exists, it necessarily ousts the jurisdiction which would have otherwise been enjoyed by the state courts. Jurisdiction in the state courts is excluded only so far as the federal Constitution gives it exclusively to the federal courts. Knapp v. McCaffrey, 177 U. S. 638, 648, 20 Sup. Ct. 824, 44 L. Ed. 921. Where exclusive jurisdiction does not exist in the federal courts, it may exist in the courts of a state. Thus the contract for domestic supplies may be enforced in the state courts by an ordinary action for breach of contract, and, theoretically, the lien which the statute causes to arise out of the contract may also be enforced in the state courts by proceedings not in rem. But the method of enforcing the lien in a court of admiralty is so much more effective than the method allowed to the state courts that the former has become practically exclusive.

Concerning the statutory lien for the construction of a vessel, the federal courts have reached a different conclusion from that reached concerning the statutory lien for domestic repairs and supplies. The contract itself is not deemed to be maritime, and so neither the lien nor the contract is ordinarily enforceable in an admiralty court. Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487. But the statutory lien for construction is nevertheless valid. As the federal court of admiralty is here without jurisdiction, it follows that, upon the principles above stated, the lien is enforceable in the state courts. This enforcement may be by a proceeding so closely resembling a process in rem that the state courts are excluded from a like remedy in the enforcement of a lien for domestic repairs and supplies given by the same state statute as that which gives a lien for construction. Where exclusive federal jurisdiction does not exist, a state statute may give jurisdiction of a like remedy to a state court.

To recapitulate: (1) For foreign repairs and supplies there arises a lien, apart from statute, enforceable in rem in a court of admiralty, and not so enforceable in the state courts, whether expressly given by statute or otherwise. (2) For domestic repairs and supplies there is no lien, apart from statute (except the possessory lien); but a state statute may give a maritime lien for them, enforceable in rem in a

court of admiralty, and not so enforceable in the state courts. (3) For construction there is no lien, apart from statute; but a state statute may give a lien, not ordinarily enforceable, in rem or otherwise, in a court of admiralty, but enforceable in the state courts by proceedings which are undistinguishable from proceedings in rem. Even a federal court is not altogether excluded from the enforcement of a statutory lien for the construction of a vessel. If the vessel has been libeled, and sold by a court of admiralty in the enforcement of a maritime claim, the surplus, after satisfying the maritime claim, will be handed over to the person entitled thereto. In the distribution of this surplus the court recognizes claims and liens other than maritime, such as pledges, mortgages, and statutory liens for construction. The Guiding Star (D. C.) 9 Fed. 521, s. c. on appeal (C. C.) 18 Fed. 263; The Maud Carter, 29 Fed. 156. On the ground of diversity of citizenship, a suit to enforce the statutory lien for construction may be brought in the Circuit Court or removed thereto. The Winnebago, 141 Fed. 945, 73 C. C. A. 295; Id., 142 Mich. 84, 105 N. W. 527, 113 Am. St. Rep. 566; Id., 205 U. S. 354, 27 Sup. Ct. 509, 51 L. Ed. 836.

A lien for the construction of a vessel, given by a statute of New Jersey, may therefore be enforceable, not only in the state courts of New Jersey, but, under some conditions, in federal courts sitting within that state. We have here to consider the effect, the enforceability, and the rank of such a lien in other jurisdictions.

Before considering these questions, however, we will deal with certain preliminary matters in the case at bar, insisted on by one side or the other. The Trust Company contended that before the Fletcher Company's lien arose the vessels were covered, as they came into existence, by the mortgage of 1905, which mentioned after-acquired property. Without asserting that this would help the Trust Company here, even if true, we may observe shortly that the contention is not supported by the facts. The vessels came into existence already subject to a lien for their construction. Work had been done in their construction, indeed, before the Fletcher Company's work was applied; but for their existence as vessels the Yale and Harvard required not only hulls, but also machinery and other fittings, and, as that machinery was supplied them, the lien of the Fletcher Company attached. The work and material thus supplied by the Fletcher Company were needed "to bring her [the vessel] into existence as a complete entity." The Victorian, 24 Or. 121, 132, 32 Pac. 1040, 1042, 41 Am. St. Rep. 838. The after-acquired property, which the mortgage was expressed to cover, came into existence, and therefore into acquisition affected with a lien. Even if the provision in the mortgage was effectual for any purpose, it was not effectual to obtain priority over the Fletcher Company's lien.

There was discussion at the argument of the scope and intent of the New Jersey statute giving the lien. Gen. St. N. J. 1895, p. 1960 (Act March 20, 1857 [P. L. p. 382]; Act March 20, 1878 [P. L. p. 158]; Act April 24, 1884 [P. L. p. 248]). The Trust Company urged that these statutes were not intended to create a lien, properly so

called, but only a method of attachment by mesne process. But the statute first declares the existence of the lien as such, and its duration and rank. Only after this has been done is a remedy for its enforcement provided in later sections of the statute. Again, section 39 shows that the lien has validity apart from the statutory provisions for its enforcement. The limitations upon enforcement are not to "be construed to impair the validity of any liens created by this act, the payment of which shall be decreed in any court of the United States." Some liens created by the New Jersey statute, and for which a method of enforcement is provided therein, are yet enforceable by proceedings other than those according to the statute. This is certainly true of liens for supplies furnished in New Jersey to vessels of New Jersey. These liens are enforceable in a court of admiralty by its peculiar process, without regard to the remedy given by the statute. The remedy given by the statute is, therefore, not exclusive. Even a court of admiralty itself, in exceptional circumstances, as we have seen, may proceed to enforce the lien for construction here in question.

That the statutory method of enforcing the lien is not exclusive has been decided by the courts of New Jersey. In Russell v. Myers, 67 Atl. 1016, the Court of Chancery of New Jersey recognized the lien for supplies given by this statute as binding a fund in the hands of its receivers. The fund arose from the sale of the vessel by order of the court of admiralty sitting in New York, and it is manifest that the New Jersey Court of Chancery enforced the lien without recourse to the elaborate proceedings provided by the statute. The lien was "enforceable [in the Court of Chancery] in all other ways in which a court of equity can act in regard to such matters." Page 1018. And it is described as "a property right which all courts, both state and federal, must recognize." As the lien for construction and that for supplies are given by the same clause of the New Jersey statute, their character is the same. No case has been found in New Jersey which in any way contradicts this exposition of the statute. So far as the Legislature of New Jersey can bring about the result, it has given to the Fletcher Company a lien upon the Yale and Harvard, which is enforceable in the Circuit Court for the district of Maine. We agree with both the reasoning and the conclusion of the learned judge of the Circuit Court in holding that this lien has not been waived or lost by the lienor's laches. The Trust Company alleged knowledge by the Fletcher Company of the Trust Company's rights; but the knowledge, if there was any, did not precede the lien.

We come, then, to answer the question stated above: Is this statutory lien enforceable in the Circuit Court for the district of Maine as the court of a jurisdiction foreign to that of New Jersey? Would it be enforceable in the state courts of Maine?

As the vessels were in New Jersey when the lien arose by virtue of the New Jersey statute, we agree with the New Jersey court that a right of property therein was created by the Legislature of New Jersey, that the Legislature intended to create this right, we have shown already, and that the Legislature was not forbidden by the Constitution of the United States to create this right of property, we

regard as settled by the decisions of the Supreme Court. Jurisdiction to enforce the nonmaritime lien for construction by a state court is held to be analogous to jurisdiction to enforce a maritime lien for supplies by a federal court of admiralty.

The owner of the Yale and Harvard, it is true, was a Maine corporation, and for some purposes the domicile of the owner draws to it the situs of personal property. But we are of opinion that this fiction is inapplicable in the case at bar. The fiction is controlled by the right of the jurisdiction within which the personal property is situated to determine the effect of those acts of the parties which transfer or affect its ownership. From the standpoint of a court sitting in Maine, this is not the case of a lien which arose upon a domestic, as distinguished from a lien which arose upon a foreign, vessel. The lien first attached in New Jersey to something which was not then a vessel, though it subsequently became one.

The right of property arising in New Jersey from a lien given by its statutes is not divested by removal of the property from New Jersey. The lien thus attaching is not limited in its application or enforcement to the state which created it. Dicey on Conflict of Laws, p. 530. Rights which have once validly attached to personal property, so as to qualify its ownership, do not ordinarily disappear, either temporarily or permanently, when the property is removed to another jurisdiction. Hornthall v. Burwell, 109 N. C. 10, 13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556. A mortgage is still a mortgage, a lien is still a lien, though the property has been removed from New Jersey to Maine. The Maud Carter (D. C.) 29 Fed. 156.

As the lien became valid at its origin in New Jersey, because of the control of New Jersey over property within its limits, so a like control by another state over personal property removed thither may subordinate or modify the effect of a property right arising in the first state. As to the effect of transactions occurring in the second state after removal of the property thereto, its law ordinarily controls. Thus, in Walworth v. Harris, 129 U. S. 355, 9 Sup. Ct. 340, 32 L. Ed. 712, the Supreme Court held that a lien created by the statutes of Arkansas upon personal property there situated was afterwards subordinated to a lien created by the laws of Louisiana, into which latter state the property had been removed. This pre-eminence of the Louisiana law was recognized, it seems, even by a federal court sitting in Arkansas.

In The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770, the Supreme Court held unconstitutional a state statute which purported to give a lien upon a foreign ship for supplies furnished to a contractor, because the statute was an unconstitutional interference with interstate commerce. But the lien here in question did not arise in the course of the commercial life of the vessel. It came into existence before the structure which is now a vessel had become an instrument of commerce. As we shall hereafter observe, we have here before us no conflict between this statutory lien and such a maritime lien as may be deemed an incident of commerce within the federal control. The Supreme Court has held a lien like that here in ques-

tion to be valid, and we are now considering, not the admitted validity of the lien, but its extent and application. In The Katie, Fed. Cas. No. 14,342, the Circuit Court for the district of Louisiana held, indeed, that a statutory lien for construction is postponed to a subsequent mortgage duly recorded under Rev. St. § 4192 (U. S. Comp. St. 1901, p. 2809). In so far as the state statute would subordinate the mortgage to the lien, it was held an unconstitutional interference with the congressional regulation of interstate commerce. Apparently the lien was deemed valid; but the mortgage was deemed a lien of higher rank. With the latter proposition we find ourselves unable to agree. The federal statute cited was not, in our opinion, intended to cut off rights of property existing in the vessel at the time of the mortgage, or to give the mortgagee greater rights than those of the mortgagor. It is to be observed that the case cited would subordinate the lien to a mortgage in a court of New Jersey as well as in a court of Maine. The federal statute concerning the mortgage of vessels engaged in interstate commerce is as effective in the state of their situs and ownership as elsewhere. In Donald v. Hewitt, 33 Ala. 534, 73 Am. Dec. 431, a lien both statutory and expressly contracted for had attached to property while in Kentucky. The property was removed into Alabama, and the Alabama court held that the statutory lien of Kentucky was outranked by a subsequent lien arising in Alabama. The same court, however, held that the lien arising in Kentucky by the express terms of the contract made there created an equitable mortgage, which was held superior to the subsequent lien arising in Alabama. The decision appears to overlook the fact that the lien in the case at bar, though given by statute, yet arises out of the contract, and could not exist without it. Fuller v. Nickerson, 69 Me. 228, 236; Mehan v. Thompson, 71 Me. 492. The contract of construction was made with reference to the statute, and a verbal incorporation of the statute into the terms of the contract, expressing in the language of the parties that which the Legislature has declared to be the law, must be an empty formality.

We hold, therefore, that the lien here in question was enforceable by the Circuit Court sitting for the district of Maine. In so holding, we would guard ourselves from certain conclusions which have been supposed to follow from the result we have reached.

We do not decide that the New Jersey lien would be enforceable in the courts of Maine, if the policy of the lien were in conflict with the public policy of the state, as declared by statute or judicial decisions. In some cases a state may recognize, or refuse to recognize, at its option, a statutory right created elsewhere. Texas & Pac. R. R. v. Cox, 145 U. S. 593, 605, 12 Sup. Ct. 905, 36 L. Ed. 829. The statute of Maine, which gives a lien for the construction of a vessel, differs indeed from the New Jersey statute before this court; but the lien given by the Maine statute, though more narrowly limited in respect of its endurance and requiring other forms for its validity, is yet a lien of the same general sort, based upon a similar idea of public policy. In Maine, as in New Jersey, the lien for the construction of a

vessel has priority over a mortgage. Perkins v. Pike, 42 Me. 141, 66 Am. Dec. 267.

We do not decide that this lien for construction, which we here recognize, is to be deemed superior or even equal to maritime liens. Whatever the statutes of New Jersey might provide, we do not suggest that they could give a lien for construction which would be of rank equal or superior to the maritime lien given for repairs and supplies. No conflict between these two kinds of lien arises in the present case.

The Trust Company contended that the recognition of the statutory lien would work great hardship to a mortgagee; but this hardship is not so great as that which arises everywhere out of maritime liens, which undoubtedly outrank either a prior or a subsequent mortgage. These maritime liens may arise in any port at which the vessel has touched, and the utmost diligence may often fail to discover them. The lien for construction can arise only where the vessel is built, and the building is seldom extended over more than two places, or three at the most, where the lien for construction is easily discovered.

In each case, the decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes